### PERRY et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
March 30, 1927.

No. 7523.

1. **Indictment and information** ⊙➡129(1)—Counts for conspiracy and substantive offenses held properly joined.

Conspiracy count is properly joined with counts for substantive offenses.

2. **Indictment and information** ⊙➡130—Separate and distinct offenses held charged by counts for conspiracy and possession and manufacture of liquor.

Count for conspiracy to possess and manufacture intoxicating liquor, one for possession of, and another for manufacturing, such liquor, charge separate and distinct offenses.

3. **Indians** ⊙➡38(4)—Count for possession of liquor in what was Indian Territory is for violation of federal statute (Act June 30, 1919 [41 Stat. 4]).

Count for unlawful possession of liquor in what was part of Indian Territory is for violation of Act June 30, 1919 (41 Stat. 4).

4. **Criminal law** ⊙➡1209—Indictment and information ⊙➡125(42)—Counts for conspiracy, possession, and manufacture of liquor held not duplicitous nor to call for double punishment.

As counts for conspiracy to possess and to manufacture intoxicating liquor, and for posses-

sion of and manufacturing the same, charge separate and distinct offenses, they are not duplicitous, nor do they call for a double punishment for the same act or transaction.

**5. Conspiracy ⬤═47—Intoxicating liquors ⬤═ 236(6½, 19)—Evidence held sufficient as to only part of defendants prosecuted for conspiracy and possession and manufacture of liquor.**

Evidence on prosecution for conspiracy to possess and to manufacture intoxicating liquors, and for possession and manufacture hereof, *held* sufficient as to certain defendants and insufficient as to other defendants.

In Error to the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Criminal prosecution by the United States against E. W. Perry and others. Judgment of conviction, and defendants bring error. Affirmed as to certain defendants, and as to others reversed and remanded for new trial.

C. S. Walden, of Kansas City, Mo., and Hugh Dabbs, of Joplin, Mo. (W. C. Peters, of Tulsa, Okl., and Walden & Andrews and Norman A. Cox, all of Joplin, Mo., on the brief), for plaintiffs in error.

John M. Goldsberry, U. S. Atty., of Tulsa, Okl. (W. B. Blair, Asst. U. S. Atty., of Tulsa, Okl., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and TRIEBER, District Judge.

VAN VALKENBURGH, Circuit Judge. At the January Term, 1926, of the District Court of the United States for the Northern District of Oklahoma at Tulsa, an indictment containing four counts was returned against plaintiffs in error and two others, to wit, one Jim Ray and one N. H. Wightman, alias Charles Wortham. The first count charged a conspiracy to have and possess certain intoxicating liquors in a certain three-story frame building with basement, located about one-fourth mile south of a certain toll bridge on the Cowskin river, situated on what was known as the E. N. Perry ranch, located about eight miles northeast of the town of Grove in Delaware county, Okl.; a further object of said conspiracy was the manufacture of intoxicating liquor at the same place, and to have and possess property and material for such manufacture. The second count was for the substantive offense of unlawful possession of whisky, gin, and alcohol on the same premises; said location having been within the limits of the Indian Territory and a part thereof prior to the admission of the state of Oklahoma into the Union, and being a place where the possession of spirituous and intoxicating liquors was then and there prohibited by federal statutes. The third count charged the unlawful manufacture of intoxicating liquor, to wit, 300 gallons of whisky, gin, and alcohol on the same premises. The fourth count charged the unlawful possession of property and material designed and intended for, and adapted to, the manufacture of intoxicating liquor; this count, however, was withdrawn from the consideration of the jury and requires no further attention. The defendants Ray and Wortham not being in custody, the trial proceeded against their codefendants Perry, McCullough, Thomblinson, and Thomas. The jury returned a verdict of guilty against all four defendants on all three counts. Perry and McCullough were each sentenced to two years' imprisonment in the penitentiary and a fine of $5,000 on the first count, to two years' like imprisonment and a fine of $300 on the second count, and to pay a fine of $100 on the third count; the terms of imprisonment to run concurrently. Thomas and Thomblinson received a sentence of imprisonment for a year and a day in the penitentiary and a fine of $300 on the first count, the same imprisonment and a fine of $100 on the second count, and a fine of $50 on the third count; the terms of imprisonment likewise to run concurrently.

The defendant Perry had owned this farm or ranch, hereinabove described, and consisting of 175½ acres, for about ten years. In the vicinity, on the Cowskin river, he had two other farms, one containing 326 acres and the other 131 acres; upon the premises was an old mill building containing four stories, or three stories and basement. Upon the farm in question, Perry, in years past, had erected a seven-room house which he used as a country place, and which he visited for short periods from time to time for diversion and rest. In this house a Mrs. Nichols, who had occupied a like position in the Perry family for some years, was installed as housekeeper and caretaker. One of her two daughters married the defendant Thomas; the other, now deceased, became the wife of the defendant Thomblinson. Mr. Perry had considerable stock upon this farm, and Thomas, who with his wife lived at the ranch house above described, worked the farm for Mr. Perry on a profit-sharing basis.

Some time in June, 1925, Perry was approached by the defendant Wortham, who desired to lease a few acres of the farm,

including the old mill, and to erect on the premises a small building for a general store. He stated that he desired to use the old building as a grist mill. Perry finally consented, and an instrument, dated July 1, 1925, was executed, whereby Perry leased to Wortham 10 acres of the farm, including the four-story building, to be used for mill purposes, for a term of three years, with the privilege of renewal or purchase. The rent reserved was $25 per month, and it was provided that $30 per month additional should be paid for the use of a tractor steam engine and a sawmill, which appears to have been located upon the premises either in conjunction with the mill building or otherwise. A small store building was erected pursuant to understanding, a general stock of goods placed therein, and Mrs. Thomas was placed in charge. Some time in September information came to the marshal of the United States for the said Northern District of Oklahoma that the premises rented to Wortham were being used for the manufacture and sale of intoxicants, a search warrant was procured, and on or about the 18th day of September, 1925, the premises were raided. The search that followed disclosed that on the first floor of the building above the basement there was a gristmill with requisite machinery. On the second floor three large stills were found in operation and also several hundred gallons of whisky; there was also found a filtering plant, mash and vats, and, in general, full equipment for the distillation of liquor. Outside the building was located a boiler and engine which form the motive power of the gristmill and also operate the steam pipe to the stills on the second floor; there was also a pump that forced the water from a spring on the premises to water tanks in the attic of the building. Waste from the operation of the stills was carried by means of a pipe to and through a hogpen situated some little distance from the building.

Of the defendants charged only Thomas was found upon the premises at the time of the raid; he had been running the engine and boiler just previously to the arrival of the officers and was eating his luncheon when they appeared. Wortham was never found. Ray and Thomblinson were in Joplin. Shortly after their arrival there, Ray informed Thomblinson of the raid and told him he had better stay away and avoid arrest. Ray then disappeared. Some one from the vicinity of the farm telephoned Perry in Joplin that a liquor plant had been found in the old mill. Unable to make personal investigation be-

cause of the illness of his wife, Perry asked McCullough, who was about to leave for Tulsa, to stop at the farm on his way and advise him (Perry) of the situation. The result was that McCullough reached the farm on the afternoon of the same day.

The record is voluminous, and the evidence by which the several defendants were sought to be connected with the unlawful enterprise, in which Wortham and Ray are conceded to have been engaged, consists of so much detail that it is impossible, within the limits of this opinion, to do more than state sufficient to insure understanding of the conclusions reached.

To the several counts of the indictment the defendants interposed a motion to quash, which was overruled.

Twenty-two assignments of error are grouped under nine points, upon which defendants rely. We shall consider such as are deemed to be essential to a decision of the case; a number of them can be disposed of without elaboration.

[1–4] The indictment was sufficient in form, was not duplicitous, and adequately charged the offenses laid in the first three counts, upon which conviction resulted. The fourth count was withdrawn from the consideration of the jury, and the court's charge so clearly confined the issues to the first three counts that no confusion could possibly have resulted in this respect. The conspiracy count was properly joined with the two counts for the substantive offenses, and the three counts submitted clearly charged separate and distinct offenses; that in the second count was for the unlawful possession of intoxicating liquor within that part of the Indian Territory in which, prior to the admission of the state of Oklahoma into the Union, the possession of spirituous and intoxicating liquors was prohibited by federal statutes. This was made an offense by the Act of June 30, 1919 (41 Stat. 4). Renfro v. United States (C. C. A.) 15 F.(2d) 991; Lucas v. United States (C. C. A. 8) 15 F.(2d) 32. The charge of the court clearly and correctly defined the nature of conspiracy, and the circumstances that may be taken into consideration for its establishment. Reserving for further consideration the requests made for peremptory instructions, we think the charge of the court fully covered all the matter contained in other requested instructions. Inasmuch as the several counts charged distinct and independent offenses, these counts were neither duplicitous nor called for a double punishment for the same act or transaction. Al-

brecht v. United States, 47 S. Ct. 250, 71 L. Ed. ——, opinion filed January 23, 1927.

[5] This leaves as the only specification entitled to consideration, the second, that:

."There was not sufficient evidence in the record to prove defendants, or any of them guilty beyond a reasonable doubt under any count of the indictment, and defendants' separate motions for directed verdicts at the close of all the evidence, and their separate requested instructions of not guilty on all counts, should have been sustained and given."

As to the defendant Perry, there was, of course, such an acquaintance and relationship with and between the parties as would furnish plausible basis for the formation of a conspiracy, provided the facts and circumstances in evidence afforded substantial proof that such a conspiracy was formed. The counts for manufacture and possession would require substantial evidence that this defendant in a legal sense participated, aided, or abetted. The substance of the evidence upon which the government placed reliance is that Perry owned the property and leased it to Wortham and Ray; that Perry used the land adjoining the 10 acres thus leased, and had, before leasing, used the entire property as a farm and for a country home; that he came there frequently to supervise this and other property not distant therefrom and for week-end rest and diversion; that he frequently brought friends with him, among them the defendant McCullough; that he was about the place sufficiently to afford opportunity for him to know that this unlawful use of his property was going on; that water impregnated with mash was carried into his hogpen; that he assisted for a few minutes in lining up the engine to be used to run the gristmill, and, as it afterwards transpired, to force water into the upper story where the stills were located; that he asked the firm who sold lumber to Wortham and Ray for the building of the store to give them a favorable price; that he allowed them the use of wood from the farm as fuel with which to run the engine; that Wortham and Ray bought goods for their store at the Joplin Grocery Company, of which Perry was an officer and stockholder; that he received notice, through some source not clearly established, that this raid was being made, and evidenced undue interest by asking McCullough to stop there on his way to Tulsa to see what could be done to protect his property.

McCullough was a friend of Perry, who enjoyed fishing and the outdoor recreation to be gained from visits to the Perry place; he had been there frequently with Perry, and he came there the afternoon of the raid pursuant to Perry's request. A witness testified that he had Wortham in his car when he passed through the tollgate one-fourth of a mile from the Perry premises. McCullough denies that he knew the man in his car, and that he had little knowledge, if any, of Wortham or Ray. This is substantially all that was adduced to connect McCullough with the transaction. In our judgment as to both these defendants, the evidence falls far short of being sufficient to justify conviction; both Perry and McCullough had visited this place for years prior to the leasing—the former as owner, and the latter as guest. There was nothing unusual about leasing the property for the legitimate purposes claimed; that is to say, to run a gristmill and store. There is no substantial evidence to connect Perry with a pecuniary interest in the enterprise, and, of course, none whatever to involve McCullough. It was natural that Perry might have leased this unused building for the rental which is conceded in the record. He furnished none of the machinery nor property; as an experienced mining man he assisted for a few minutes in setting the engine; this was shortly after the lease was made. His visits to the farm lasted but a day or two at most; some weeks he did not come at all. He says he detected no odor of liquor about the premises; for that matter, but one witness claims to have detected any odor at any time, and that of a nature he could not well describe. The windows were boarded up and covered with cheese cloth. The evidence of mash, if there was any, in the hogpen, could easily have been mistaken by Perry for the chopped feed which it is conceded was prepared for feeding in the barrels near the pen. As Carey, a witness for the government, in attempting to describe some odors or fumes he had detected, said: "I didn't think of such a thing at that time, hardly, because they had slop barrels there and the hogs in the pen and naturally a hogpen will smell sour anyway."

In lending his good offices for the buying of lumber, and in permitting, without charge, for fuel, the use of the wood, of which there was an abundance on the place, Perry did no more than any well-disposed landlord may be expected to do, and often does. In fact, the only thing that this evidence may be tortured into a tendency to establish is that possibly both Perry and McCullough might have had reason to suspect that the premises were be-

ing thus misused, but this, if true, would convict neither of them under the charges framed in this indictment. Perry, at most, could have been charged with permitting a nuisance on his property. The nuisance charge in some form is the only one that could have been laid at his door. McCullough was not involved even to this extent. If the visits of Perry and McCullough had started with, and been coincident with, this illicit use of the mill property, those visits would have been attended by some significance, but their conduct after the lease was made did not differ from their practice and habit for many years prior thereto. As to the defendants Perry and McCullough, the motions for directed verdicts should have been sustained.

Now, as to Thomblinson and Thomas. They were working—Thomblinson regularly, and Thomas much of the time—for Wortham and Ray, who were concededly engaged in the unlawful practice charged. We think there was enough in the record to warrant the finding of the jury that they were knowingly and consciously aiding in the conspiracy and in the commission of the substantive offenses. These men apparently alternated in running the engine and boiler which supplied the motive power not only to the gristmill, but to the stillhouse. As both say, but two or three farmers at most brought grain to the mill for grinding; yet the engine was running continuously. It is claimed that they thought chopped feed was being ground for sale, but there is no evidence of such sales, and Thomblinson alone testifies to having seen a negligible quantity of such feed in the store. Mrs. Thomas makes no mention of such. It is improbable that these men could have been constantly about the place and have engaged in an important part of the operations being there conducted without knowledge of what was being done. The witness Foley testifies that Thomblinson purchased from him almost daily from 300 to 600 pounds of ice for these premises; 100 pounds of such ice was found in the stillhouse at the time of the raid. Thomblinson's conduct was otherwise unsatisfactory and attended with suspicion; upon being informed by Ray that the raid had been made, he secreted himself, at first in his uncle's home, and later in Wichita, until he was assured that his bond had been secured. There was enough evidence from which the jury might legitimately have found that these two defendants were working with knowledge of what as being done, and aided and abetted the unlawful acts, and this matter of knowl-

18 F.(2d)—31

edge and intent was for the jury. In his charge the court said:

"Now, gentlemen, under the law you are instructed that all persons who are concerned in and who knowingly aid and assist another in the commission of an offense—that is, they are interested in its commission and they aid and assist in its commission and encourage another, and do that knowingly—are equally guilty under the statute as principals, the same as if they had perpetrated the act that constitutes the offense."

We think as to the defendants Thomblinson and Thomas the judgment should be affirmed. As to the defendants Perry and McCullough, it is also urged that the charge of the court was unduly argumentative. It may be conceded that the charge went, perhaps, to the limit of legitimate comment; however, no sufficient exception was taken to preserve the point, and inasmuch as upon another trial the same criticism may not arise, we find it unnecessary to pass upon this specification.

It follows from what has been said that, as to the defendants Thomblinson and Thomas, the judgment is affirmed, and, as to Perry and McCullough, is reversed, and the case remanded for a new trial.