## CAPONE v. UNITED STATES.

### No. 4457.

Circuit Court of Appeals, Seventh Circuit.
July 24, 1931.
Rehearing Denied Sept. 25, 1931.

There was evidence tending to establish the following facts:

Appellant, a resident of Cook county, failed to file a return or pay any income tax for the years 1922, 1923, 1924, and 1925. In November, 1926, he was called to the Revenue Agent's office, and, as a result of conversation with the Revenue Agent, admitted that he owed $4,082.18. He thereupon filed (November 23, 1926) delinquent returns and also a "waiver and consent to assessment" of this amount. His income tax return for each of the four years stated that he was a "gambler" by occupation and his income was derived "from speculation." Such speculation resulted in a reported profit of $20,000 for each of three years and $15,000 for one year. He accompanied his returns with an affidavit wherein he stated that he had previously failed to file a return or pay a tax because of his belief that his income, illegally obtained, was exempt from taxation. On October 3, 1927, appellant made a written offer of compromise, upon a blank ordinarily used in submitting such an offer, wherein he offered to pay $1,000 as a compromise for his income taxes for the years

1922, 1923, 1924, and 1925. As grounds for such offer, he referred in his offer to an accompanying letter, which read as follows:

"September 9, 1927.

"Mrs. Mabel Reinecke, Collector of Internal Revenue, Federal Building, Chicago, Illinois.

"Dear Madam:

"In Re: Ralph Capone, 1924 S. 49th Court, Cicero, Illinois. Income taxes 1922, 1923, 1924 and 1925.

"In re Offer in Compromise of income taxes for the years above stated, I wish to submit as reasons for acceptance of the offer as follows:

"1. I have sustained considerable losses as a result of sickness and death of racing horses, which I have owned for the past year.

"2. I have lost considerable money as a result of gambling on horse races.

"3. I have spent whatever reserve money I had in defending myself and my employees for various criminal prosecutions including federal and state.

"At the present time my liabilities are very much greater than my assets and the only tangible asset that I have, is a half interest in two racing horses, now located at Hawthorne Race Track and at the present time I am using up practically my entire income, trying to get them in shape.

"I am hereby making an offer in compromise of $1000.00 in full for income taxes for the years 1922–23–24–25 and respectfully submit that you accept same, as I am compelled to borrow even this small sum. Thanking you for your many courtesies in this matter, I am. * * * "

The letter was signed by appellant in ink, and the offer of compromise and the accompanying letter were filed October 4, 1927.

His statements in the returns filed and in his offer of compromise and in the accompanying letter were false in the following respects: His profession was not limited to gambling; he was extensively engaged in selling and transporting liquor; his income was greatly in excess of the amounts reported; his liabilities did not equal his assets; he had on hand money with which he could have paid his taxes; he was not compelled to borrow the money offered as a compromise of his taxes.

As further proof of appellant's attempt to deceive the collector of internal revenue, it appeared that he deposited his money in various banks under fictitious names and conducted his business under various false or feigned names, frequently changing the deposits and the names in which the deposits were made. It further appeared that he thus deposited, during a period of five years and four months next preceding April 22, 1929, sums aggregating $1,851,840.08.

While there is some dispute in the testimony and some uncertainty as to the facts, the record disclosed evidence from which the jury could well have found that following the filing of the report by appellant, a tax was assessed against him. This was followed by a second assessment. Likewise, the evidence justified a finding that a demand was made on appellant for the payment of the tax shortly after its assessment, which was followed (in September, 1927) by the issuance of a distraint warrant, which was in the hands of an officer for service when appellant and his counsel, after learning that such warrant was about to be served, appeared at the office of the collector. He there learned of the assessment of the tax and of the government's demand for its payment, if he did not know of it before. This all occurred prior to the appellant's making his offer of compromise.

The assignments of error raise the following questions: (1) The sufficiency of each count of the indictment; (2) the bar of the statute of limitations to the first count of the second indictment; (3) the effect of the passage of the statute (section 2616, title 26, USCA) after the submission of the offer of compromise; (4) the failure of the evidence to support the charges in the indictment; (5) the admission of evidence over appellant's objection; (6) the joinder of the three indictments for the purposes of trial; (7) the validity of the sentence.

Dennis M. Kelleher, of Fort Dodge, Iowa, and George Norman Murdock, of Chicago, Ill., for appellant.

George E. Q. Johnson, U. S. Atty., of Chicago, Ill., Cassius Poust, Asst. U. S. Atty., of Sycamore, Ill., Jacob I. Grossman, Asst. U. S. Atty., of Chicago, Ill., and Dwight H. Green and Alfred Page, Sp. Assts. to Atty. Gen.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). Pertinent statutory provisions are set forth in the margin.[1]

---

[1] Section 80, title 18, USCA (Criminal Code, § 35, amended):

"*Presenting False Claims; Aiding in Obtaining Payment Thereof.* Whoever shall make or cause to

Each count of the first indictment and each count of the third indictment attempts to charge a violation of section 80, title 18, USCA. Appellant contended that no offense is set forth in any of the four counts of these two indictments. He properly presented the question, first, by demurrer to the indictment and then by motion to direct a verdict and still again by motion in arrest of judgment.

His objection to these four counts is based upon the alleged inapplicability of section 80, title 18, USCA, under which the indictments are drawn. It is evident that, if the objection is well taken, all four counts must fail unless the government can show that though drawn to state an offense under section 80, title 18, USCA, they are nevertheless good under section 1266, title 26, USCA.

Substantial parts of count 1 of the first indictment are set forth in the margin.[2]

---

be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, fictitious, or fraudulent; or whoever, for the purpose of obtaining or aiding to obtain the payment or approval of such claim, or for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or make or use or cause to be made or used any false bill, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to contain any fraudulent or fictitious statement or entry, shall be fined not more than $10,000, or imprisoned not more than ten years, or both."

Section 1265, title 26, USCA:

"*Failure to Pay Certain Other Taxes or to Make Returns and So Forth; Penalty.* Any person required under this title to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this title, who willfully fails to pay such tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution.

Section 2616, title 26, USCA:

"*Compromises—Concealment of Assets.* Any person who, in connection with any compromise under section 158 of this title, or offer of such compromise, or in connection with any closing agreement under section 2606 of this chapter, or offer to enter into any such agreement, willfully (1) conceals from any officer or employee of the United States any property belonging to the estate of a taxpayer or other person liable in respect of the tax, or (2) receives, destroys, mutilates, or falsifies any book, document, or record, or makes under oath any false statement, relating to the estate or financial condition of the taxpayer or other person liable in respect of the tax, shall, upon conviction thereof, be fined not more

than $10,000 or imprisoned for not more than one year, or both. (May 29, 1928, 8:00 a. m., c. 852, sec. 616, 45 Stat. 877.)"

Section 1266, title 26, USCA:

"*Failure to Collect, Account for, or Pay Over Certain Taxes.* Any person required under this title to collect, account for and pay over any tax imposed by this title, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

[2] "The grand jurors for the United States of America * * * upon their oath present, that Ralph J. Capone, hereinafter called defendant, on March 12, 1927, * * * and at and within the First Internal—Revenue Collection—District of Illinois, became and was indebted to the United States, and to the Treasury Department thereof, in the total sum of $4,065.75, on account of income taxes then due and owing from him to the United States, and by reason of an assessment and determination of said taxes made by the Commissioner of Internal Revenue of the United States and, on February 19, 1927, certified and delivered by said Commissioner to the Collector of Internal Revenue of the United States for said collection-district, and by reason of a notice and demand made to and upon said defendant on March 1, 1927, by said collector, who was thereby required by law there to proceed to collect said taxes from said defendant; and that said defendant afterwards, to wit, on October 4, 1927, for the purpose and with the intent on his part of cheating, swindling and defrauding the Government of the United States, and the Treasury Department thereof, out of a large portion, to wit, $3,065.75, of said sum so then still due from him to the United States, unlawfully and feloniously, at and within said judicial and collection districts, did make to said collector certain false statements and representations concerning his ability to pay any more than $1,-000.00 on said debt with money borrowed, as he claimed, by him for that purpose, to wit, statements contained in a certain written 'Offer in Compromise' filed on that day with said Collector by said defendant, and in a certain letter, dated September 9, 1927, signed by said defendant, and also filed, on said October 4, 1927, with said Collector, to the effect that he the said defendant then had no tangible assets except a half interest in two racing horses, and that he was then insolvent and therefore unable to pay said debt for taxes; which said statements, as said defendant then and there well knew, then were and are false, in that said defendant then had, and since then has had, in addition to his half interest in said racing horses, large assets, among others the sum of $25,000.00 in money in a bank at and within said judicial and collection districts subject to check by him, and in this that he, the said defendant, then was neither insolvent nor unable to pay said debt; and that said defendant, when so as aforesaid making said false statements to said Collector of Internal Revenue for the purpose aforesaid, there expected thereby to induce said collector to believe said statements to be true and to transmit said offer in compromise and letter to the proper officers of said Treasury Department with her recommendation that the same be accepted by said officers and so to procure the acceptance by said officers of said offer of said defendant to pay $1,000.00 in full for his liabilities in connection with said debt, as said officers then were by law empowered to do if said statements were true, and thereby to cheat, swindle and defraud the United States as aforesaid: Against the peace and dignity of the United States, and contrary to the form of the statute of the same in such case made and provided."

It is appellant's contention that the offenses covered by section 80, title 18, USCA, are limited to the presentation of false claims against the government. In support of his position, he cites U. S. v. Cohn, 270 U. S. 339, 46 S. Ct. 251, 253, 70 L. Ed. 616; U. S. v. Bowman, 260 U. S. 94, 43 S. Ct. 39, 67 L. Ed. 149; U. S. v. Hull (D. C.) 14 F. 324.

Appellant relied strongly upon the Cohn Case, supra, to sustain the argument that section 80 applies only to offenders who present false claims against the government. He further supports his position by reference to the Revenue Act, which contains various sections making it unlawful for a taxpayer to willfully fail to file a return, to willfully refuse to pay a tax due the government, to willfully conceal assets in connection with an offer of compromise, and to willfully attempt to evade or defeat a tax. Title 26, USCA, §§ 1265, 1266, 2616.

Appellee meets this argument by contending: First, that section 80, as it now reads, is not limited to offenders who filed fraudulent claims against the government. Second, section 80 is not amended or repealed by implication by the passage of the sections of the Revenue Act dealing with offenders who willfully fail to file returns or pay their tax, or who willfully attempt to evade or defeat a lawful tax due the government. Third, if section 80 be, by implication, amended by the aforesaid sections of the Revenue Act, the 1918 amendment to section 80 is nevertheless still applicable, because section 2616 (title 26, USCA) of the Revenue Act was not enacted until after appellant had made the misrepresentations. Fourth, if section 80 be modified or amended, or, by implication, repealed, so far as it applies to offending taxpayers, the first and third indictments are nevertheless good under section 1266, title 26, USCA, notwithstanding they were drawn with the purpose of stating an offense under said section 80.

The issues thus clearly drawn necessitate the consideration of the history of section 80, as well as the construction placed upon it by the courts that have dealt with it. It seems quite clear, and we accept it as established, that, prior to the amendment of 1918, section 80 applied solely to those offenders who filed fraudulent claims against the government. But in 1918, the act was amended by inserting the words "or for the purpose and with the intent of cheating and swindling or defrauding the Government of the United States, or any department thereof, or any corporation in which the United States of America is a stockholder, shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations * * *" The presence of these words, inserted by the amendment, can not be ignored. They must be given a meaning. To a certain extent, at least, the amendment makes inapplicable all of the decisions construing the section prior to this amendment. It is also clear that the effect of the amendment was to enlarge the class of offenders to which the section applied.

Who were thus included in the class by the amendment?

If we insert the word "whoever" after the word "or" for the purpose of clarity, there is little doubt or uncertainty as to its meaning. It would clearly include one who is indebted to the government for taxes, and who for the purpose and with the intent of cheating and swindling or defrauding the government knowingly and willingly falsified, concealed, or covered up by any trick, scheme, or device, material facts, or who made or caused to be made any false or fraudulent statement or representation. If, however, we included after the word "or" the limitation found in the first line of the statute, "whoever shall make or cause to be made or present or cause to be presented, for payment or approval, * * * any claim upon or against the Government of the United States," then it is equally clear that the offender must be a claimant against the United States. If the latter construction be adopted, we are at some loss to understand the purpose of the amendment.

The section, before the amendment, made it an offense to file a false claim knowing it to be false, fictitious, or fraudulent. The crime there charged was established without showing any fraud, trick, or scheme to secure its allowance. The section did not require the allowance of a claim, but merely the presentment of such a claim. The amendment, therefore, if construed as appellant contends for, would not only require the presentment of a false claim, but proof that fraudulent means were adopted to secure its allowance. The amendment was enacted a few years after the passage of the Revenue Act calling for the payment of income taxes, the assessment and collection of which supplied a fertile field for the practice of fraud by those who would so evade federal taxes. Such increased opportunity for fraud upon the government might account for the action of Con-

gress in passing the amendment. At any rate the language of the amendment is comprehensive, and we see no reason for giving it a narrow construction.

The Cohn Case, so much relied upon by the appellant, deals with a fact situation entirely different from the one before us. Doubtless, it must be read as applicable only to the facts there disclosed. However, it is significant that the court in disposing of that case dealt with the evidence on two hypotheses: (a) That Cohn was a claimant who filed a false claim knowing it to be false and fraudulent, and (b) that he defrauded the government "within the meaning of the statute." It would have been unnecessary for the court to consider the second hypothesis if section 80 were limited in its scope to offenders who filed or presented false claims. On this second hypothesis, the language of the court, " 'Defrauding' * * * is used in connection with the words 'cheating or swindling,' indicating that it is to be construed in the manner in which those words are ordinarily used, as relating to the *fraudulent causing of* pecuniary or property loss," is significant. The court also said: "We may assume, without deciding, that under these Regulations Cohn was not entitled to enter and obtain possession of the cigars until he had paid the draft and become the holder of the bill of lading. But even so, the acts by which the possession of the cigars were obtained did not constitute an offense against the United States unless done for one or other of the purposes entering into the statutory definition of the offense and charged in the indictment, that is, either for the purpose of obtaining the approval of a 'claim upon or against' the Government *or for the purpose of 'defrauding' the Government.*" United States v. Cohn, 270 U. S. 339, 345, 46 S. Ct. 251, 252, 70 L. Ed. 616.

The court's conclusion is predicated upon the fact basis that the cigars, which Cohn attempted to obtain without paying the import duty on them, were in fact non-dutiable. This fact forced the government to take the untenable position that its construction of the entire section included the offense of impairing or obstructing governmental functions by fraudulent practices, whereas the language of the amendment limited the prosecution to pecuniary or property loss suffered by the government through the fraud of the accused.

Our conclusion is that the amendment included in section 80 those offenders who, by their cheating, swindling, or defrauding, caused a "pecuniary or property loss" to the government. This latter class of offenders need not be claimants, who present claims against the government, but include others, like taxpayers who cause pecuniary or property loss to the government by willfully concealing by some trick, etc., a material fact.

Appellant's argument that this construction of the statute should not be adopted because Congress has enacted three other penal provisions, parts of the revenue act, to punish such offenders, is lost, even though we might otherwise be persuaded thereby, when it is recalled that such provisions were not in existence when the amendment to section 80 was enacted.

Whether section 80, title 18, USCA, is by implication amended by sections 1266 and 2616, title 26, USCA, also presents an interesting and a somewhat close question. Is section 2616 so similar to the amendment to section 80 as to require us to say that the two statutes are in pari materia? We think they are not. Strictly speaking, statutes defining crimes are never in conflict, nor are they inconsistent. Each deals with offenders who do prohibited acts. Such asserted inconsistencies as exist must necessarily be limited to the punishment provisions. The punishment provisions may overlap, but they do not conflict.

Likewise the maxim, "Generalia specialibus non derogant," applies only when two sections of a civil statute or two paragraphs of a contract dealing with the same subject-matter are inconsistent in whole or in part. Surely it cannot be said that statutes defining crimes are in pari materia merely because there is a likeness of subject-matter. There must be identity of elements constituting the crime. Identity, not similarity, must be the test in determining whether statutes defining crimes are in pari materia. If one statute which defines a crime requires an element not present in another criminal statute, separate crimes are defined.

We have recently had occasion to consider similar questions in the case of Lawrence C. O'Brien v. U. S., 51 F.(2d) 193, decided June 29, 1931, and, Blockburger v. U. S., 50 F.(2d) 795, decided June 11, 1931, so that further discussion is unnecessary.

But if we assume for the purpose of the argument that the statutes are in pari materia, it is apparent at once from a reading of them that there are differences in essential elements between the crime defined by section 80 as amended and the section deal-

ing with willful attempt to evade and defeat a tax (section 1266) and the section dealing with a willful failure to file an income tax return and willful failure to pay a tax (section 1265) which differences refute the contention that parts of section 80 were repealed by implication by the passage of the other sections. Perhaps the most related section is section 2616. It deals with concealment of assets in connection with an offer of compromise. However, there are differences between section 2616 and section 80, as amended, which would necessitate the establishment of different facts to sustain convictions under the respective sections. To illustrate, it would be necessary, in order to secure a conviction under section 2616, that there be an offer of compromise of a tax. No such fact would be necessary under section 80. Moreover, under section 80, a successful prosecution would necessitate the production of proof to the effect that the accused acted "with the intent of cheating and swindling or defrauding the Government." Still another difference is to be found in the fact that a successful prosecution under one part of section 2616 requires proof of a willful concealment of property from the officers or employees of the United States.

But if it be conceded, for the purpose of the argument, that section 80, title 18, USCA, was by implication repealed by section 2616, title 26, USCA, it would only be so repealed to the extent of the subject-matter specifically covered by said section 2616, to wit, fraud practiced by the taxpayer in connection with a compromise or offer of compromise of his tax. Such a construction, however, would be of no avail to appellant here because he is charged with an offense, the commission of which occurred prior to the passage of section 2616. Section 80 was then in force and effect and applied to appellant's wrongdoing. It would remain in force for the purpose of such prosecutions, even though it were repealed by implication when section 2616 was enacted. See title 1, USCA, § 29.

**Indictment under the Wrong Statute.** The Government contended that even though section 80, as amended, be construed as contended for by appellant, all counts of the first and third indictments state an offense under section 1266, title 26, USCA.

Judge Wilkerson, in passing upon this question in the District Court, said: "It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some statute in force. The indorsement on the margin of the indictment constitutes no part of the indictment and does not add to or weaken the legal force of its averments. We must look to the indictment itself, and if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute." Williams v. United States, 168 U. S. 382, 389, 18 S. Ct. 92, 94, 42 L. Ed. 509.

With this statement we agree. Taylor v. U. S. (C. C. A.) 2 F.(2d) 444. If the indictment states a good cause of action against the defendant, under section 1266, title 26, USCA, even though drawn to state an offense under section 80, title 18, USCA, it is nevertheless invulnerable to attack by demurrer.

An examination of the second count of indictment No. 21,117 convinces us that the facts there set forth state an offense under section 1266. The indictments charged appellant with being a person required to pay a tax; that he willfully attempted to evade and defeat such tax; that the means set forth were fraudulent and prompted by criminal motives; and therefore the requirements of said section 1266 were met.

There is here no such question as was presented in the O'Brien Case, supra, and which in the O'Brien Case prompted a dissenting opinion. Though the conviction under the first and third indictments be made to rest upon section 1266, instead of section 80, since the willful attempt to evade in the instant case was not limited to a willful failure to pay the tax, there can be no such contention as was made in the O'Brien Case as the basis for saying that O'Brien was being twice punished for the same offense, and that the two statutes there under consideration were in pari materia.

**Statute of Limitations, Count 1, Second Indictment.** The first count of the second indictment attempts to charge appellant with a violation of section 1265 of title 26, USCA, and charges that he was indebted to the United States in the sum of $4,065.75 for income taxes which had been assessed and were past due; that he had been duly notified of said assessment, and demand was made on March 1, 1927, for their payment; that appellant was able to pay said taxes; that he unlawfully and willfully failed to pay the same, and that the taxes had not been

paid by any other person on behalf of said defendant.

Appellant relied upon the statute of limitations as a defense to this count. The indictment was returned on January 31, 1930. Unless the evidence showed that the crime was committed subsequent to January 30, 1927, this defense must prevail. Section 585, title 18, USCA.

Section 1265, title 26, USCA, has been heretofore quoted. Reliance is upon that provision thereof which reads: "Who willfully fails to pay such tax, * * * *at the time or times required by law or regulations*. * * *." Appellant contends that, inasmuch as the income taxes for the years 1922, 1923, 1924, and 1925 became due and payable March 15 succeeding the taxable year in which the income was earned, the statute of limitations began to run from said date.

Appellee contended that to constitute the offense charged, the failure to pay the tax must be willful; that a taxpayer might fail to pay his tax when it became due and yet not violate this section. It is only when his nonpayment becomes willful that he violates the act. This last named issue—willfulness—is usually, and was in the instant case, an issue of fact and a question for the jury. As the statute of limitations does not begin to run until the offense is committed, it could not begin to run until the failure of the accused became willful. Therefore, the date when the failure became willful was also a material issue for the jury to determine.

We see no escape from the latter reasoning. True, the statute limits the words "who willfully fails to pay such tax" by the clause "at the time or times required by law or regulations. * * *." This limitation, however, does not mean that one cannot offend against this section unless his refusal to pay is willful on March 15 of the year succeeding the earning of the income. We think the only rational construction that can possibly be placed upon the words, "at the time or times required by law or regulations," includes all dates subsequent to the earliest date at which such tax is due and payable and continues so long as the tax is unpaid and remains due and payable. It would be absurd and ridiculous to hold that a taxpayer might avoid conviction under this section if his failure to pay were willful on all days save March 15 of the year succeeding the year the income or gain was received. Congress never intended such an effect to be given to its language. It intended that the failure to pay a tax could become willful at any date or dates the tax was made payable. It was due as much the day after March 15 as it was on March 15.

There is another reason which supports the conclusion thus reached.

If it be conceded that appellant's tax became due March 15 following the year the income was received, it by no reason follows that it was the only time when his income tax for this year was due. Appellant's failure for four years to file any income tax return was followed by his filing delinquent income tax returns for said years in November, 1926. At that time he made certain representations to the collector to the effect that his failure to file was due to a misunderstanding of his obligations under the revenue laws. At the same time, he consented, in writing, to an assessment and determination of the tax without further notice to him. But the assessment of the proper tax depended upon the determination of the amount of penalty which was to be imposed, as well as the amount of interest which was to be added to the sum for which he was admittedly liable. The determination of these two items was for the Revenue Department to make. At this time, November, 1926, appellant was informed that he should pay the tax when he was notified of its assessment and determination. On December 22, 1926, the revenue officer at Chicago sent him a written notice wherein it was stated: "No remittance should be made until you receive notice of the assessment from the Collector of Internal Revenue for your District."

Upon the filing of these delinquent returns and the written consent on the part of the taxpayer to an assessment and determination of the tax upon such delinquent returns, the government was in a position to make a valid assessment. The time fixed for the payment of such tax assessed upon the delinquent returns depended upon its assessment, and was, of course, different from the time fixed in the statute for the original payment of the income tax without penalties or interest. Perhaps the existence of different dates for the payment of income taxes accounts for the use of the expression, "time or times required by law or regulations," in section 1265.

A further illustration of the difference in times when taxes are due and payable appears in sections 1051 and 1054 (title 26, USCA) as well as other sections dealing with

the assessment and collection of deficiency taxes. These sections provide different times for the payment of deficiency taxes. They also make provisions for earlier and later payment thereof. Such a tax, though due from the taxpayer on March 15 following the year the income was received, was nevertheless a tax which the taxpayer was not required to pay until after it was assessed and determined. Assessed at a much later date, it became a fixed liability only when determined. The time of its payment was not March 15 following the year when the income was received. And, of course, it cannot be successfully contended that section 1265, the Criminal Statute, did not apply to the willful failure to pay deficiency taxes any more than such section should be exempted in its application from cases where the tax was assessed upon the filing of ·delinquent returns. It therefore seems to be clear that there are different times when income taxes are due and payable, even though we give the limitation clause its narrowest possible construction. And so our quest may be directed to an inquiry as to the time or times when the tax (including penalties and interest) assessed on appellant's delinquent returns became payable.

The notice from the Treasury Department to the taxpayer to the effect that no remittance should be made until he received notice from the Collector of Internal Revenue was in the regular course of business and pursuant to a regulation, the ·effect of which was to postpone the date when appellant was required to pay the tax assessed on his delinquent returns. Other proof in the record tended to show that such notice and such demand were not made by the Collector of Internal Revenue for the District of Chicago until after January 31, 1927. As the indictment was returned within three years from such date, the statute of limitations had not run against this offense.

**▮▮▮▮▮** *Count 2 of the Second Indictment.* Count 2 of the second indictment charged appellant with being indebted to the United States in the sum of $4,065.75 for income taxes; that such tax was assessed and determined upon his returns showing said amount to be due; that notice was given of such assessment, and demand made for its payment on March 1, 1927; that defendant failed to pay said tax; that no one has paid it for him; and that on October 4, 1927, he filed with the collector a written offer of compromise of his debt for taxes and offered to pay

$1,000, in accordance with section 158, title 26, USCA; such offer remained pending with the collector until October 8, 1928, when it was rejected by the Commissioner of Internal Revenue and by the collector; that appellant well knew said offer was pending; that he did unlawfully conceal from the collector certain property, to wit, $10,000 on deposit in the Pinkert State Bank in Cicero, Ill., under certain fictitious and assumed names, James Carson, Harry Roberts, and Harry White; that he failed to disclose to said collector the fact of such deposits; that such money was well known to appellant to be estate, money, and property which he could have used as a taxpayer to satisfy his debt.

Appellant's position is that his offer in compromise was made October 4, 1927, and that the act under which he was indicted, 26 USCA § 2616, was enacted May 29, 1928, and that he could not be punished for an offense which the statute created after the act was committed. Section 2616, heretofore quoted, deals with the subject of compromises and concealment of assets.

Appellee's argument is that the offer of compromise was a continuing one; that the written document which set forth such offer was but evidence of the proposed compromise; that each and every day from the date the offer was made to the government until it was rejected by the government there was a new offer of compromise.

We are here dealing with a criminal statute. Moreover, the expression "offer of compromise" has a well-understood meaning. Section 158, title 26, USCA, deals with the subject of compromises and authorizes the Commissioner of Internal Revenue to compromise any civil or criminal case arising under the Internal Revenue Law. Rules and regulations have been promulgated, and blanks have been furnished for use by the taxpayer who desires to submit an offer of compromise. Keeping in mind that we are dealing with a criminal statute, and, further, that the construction of any statute ordinarily should be given only a prospective effect (25 R. C. L., page 787), we conclude that section 2616 applies only to persons who make an offer of compromise after its passage and does not apply to one whose offer of compromise antedates the passage of the act. Such a construction makes it unnecessary for us to decide the doubtful question, which otherwise would arise, of whether one who made an offer of compromise before the act,

and did nothing affirmatively in reference thereto after the passage of the act, would have violated the statute by remaining silent or by not withdrawing the offer.

**Admission of Evidence.** Appellant assigns errors in the admission of evidence. They are without merit and require no extended discussion. One such class of evidence deals with the proof offered and received bearing upon the accused's participation in the beer business at times preceding and subsequent to the date the offer of compromise was made. Appellant contended that he was prejudiced thereby in that such evidence placed him in an unfavorable light before the jury. It is argued that, as such evidence tended to show the accused to have guiltily participated in an illegal business, it prejudiced him before the jury. There is, of course, no legal justification for showing that the accused committed offenses other than those charged in the indictments unless such other offenses are connected with the offenses for which he is on trial.

In the instant case, the evidence objected to tended to establish the commission of the crimes charged in the indictments. That being the case, there was no justification for excluding it, even though it tended to establish the commission of an offense not charged in the indictments. Appellant stated in his offer of compromise and in his various efforts to secure a settlement of the taxes due the government for a sum less than the full amount that he was a professional gambler whose property had all been lost; that his only assets were a couple of broken-down race horses, and that he was not able to train them for races wherein he might recoup his fortune. He also stated that he had to borrow the $1,000 with which to make the offer in compromise. To disprove these facts, to show that the accused made false and fraudulent representations and to show that his failure to pay his taxes was willful, it was permissible for the government to show that appellant's principal business was trafficking in beer; that the proceeds from the beer business in five or six years exceeded a million and a half dollars, and that at all times he had to his credit, under fictitious names, in various banks, sums far in excess of the amount required to pay his taxes. That such evidence was damaging and prejudicial may be conceded, but such fact affords no grounds for its exclusion. It was revelant to the issues presented by the indictments upon which the accused was being tried.

Other evidence objected to deals with the proof obtained from the clearing house sheets of the Pinkert State Bank and other memoranda and records of that bank, as well as the tabulations made therefrom.

We had occasion to consider a somewhat similar objection to such evidence in Cub Fork Coal Co. v. Fairmont Glass Co., 19 F. (2d) 273, and we adhere to the views there expressed.

The records were sufficiently established by competent proof to justify their admission in evidence.

*Sufficiency of the Evidence to Support the Verdict.* We have considered this assignment of error and find ourselves compelled to reject it. The evidence, it seems to us, not only supported the verdict, but overwhelmingly established each fact essential to the successful prosecution of the causes set forth in the indictments.

**Appellant's strongest contention in respect to this assignment of error was that the tax was not assessed or determined to the knowledge of appellant; neither was there any demand made upon him for its payment. While there was some confusion due to the fact that the collector made an assessment as did the Commissioner of Internal Revenue, we think the evidence clearly established, not only the levy and assessment of a tax, but that notice was given to the appellant, and that payment was demanded. It is difficult to reconcile appellant's alleged ignorance of the existence of the tax with his offer of compromise. Likewise, his assertion of innocence respecting the amount due, or that the government was making a demand therefor, is disputed by the proof that a distraint warrant was issued and would have been served upon him had he and his attorney not gone to the collector's office and thereafter made a second offer of compromise somewhat larger than the first.

Moreover, this was not a deficiency tax. A deficiency tax is defined by section 1047, title 26, USCA. As it was not a deficiency tax, the notice of its assessment and demand for its payment were not required.

**Joinder of Offenses.** Appellant complained because the court consolidated the indictments for the purpose of trial. As we understand appellant, the alleged error committed by the trial court was in compelling him to go to trial on charges which joined felony counts with misdemeanor counts.

There is no merit in this objection, for section 557, title 18, USCA, authorizes the consolidation of several indictments, as well as the inclusion of several counts in a single indictment. The statute has been repeatedly so construed and upheld. Kelleher v. United States, 59 App. D. C. 107, 35 F.(2d) 877; Perry v. United States (C. C. A.) 18 F.(2d) 477; Phillips v. United States (C. C. A.) 264 F. 657. We have found no case under this section which holds that indictments may not be consolidated for the purpose of trial because one charges a misdemeanor while the other charges a felony.

■■■■■ *Sentence.* The sentences as pronounced have been set forth in the statement of facts. It is argued that they are in such form and the times for their commencement are so arranged as to prevent the application of the parole statute to the penitentiary sentence. We are unable to appreciate appellant's argument. The statutes permitted the imposition of the sentences which the judge pronounced. The court could have made all of the sentences run consecutively as well as run concurrently. Had it desired to prevent the operation of the parole law before three years of imprisonment had expired, it could, under the counts in the first and third indictments, have pronounced sentences which exceeded ten years. The sentences pronounced were much less than the maximum penalty provided in case of conviction therefor. Likewise, the court could have caused the enjailment upon conviction, under the two counts in the second indictment, to begin at the end of the penitentiary sentence.

If the sentences were within the power of the court to impose, they are not in any manner affected by the operation of the parole law. It is for the court to impose such penalty as in its discretion is deemed fairly proportionate to the offense. If and when the parole law may be invoked in a given case is a matter for subsequent consideration and proceedings under that law. Hawkins v. United States (C. C. A.) 14 F.(2d) 596.

Other assignments of error we have duly considered, but they do not require separate discussion.

The judgment and sentence pronounced upon the second count of indictment 21,118 is reversed. The judgment and sentence on all other counts of the three indictments are affirmed.