**GLECKMAN v. UNITED STATES (two cases).** [*]

Nos. 10203, 10302.

Circuit Court of Appeals, Eighth Circuit.

Nov. 26, 1935.

---

[*]Writ of certiorari denied 56 S. Ct. 501, 80 L. Ed. ——.

Patrick J. Ryan, of St. Paul, Minn., for appellant.

Linus J. Hammond, Asst. U. S. Atty., of St. Paul, Minn. (George F. Sullivan, U. S. Atty., of St. Paul, Minn., and Earl C. Crouter, of Washington, D. C., Atty., Department of Justice, on the brief), for the United States.

Before GARDNER, WOODROUGH, and FARIS, Circuit Judges.

WOODROUGH, Circuit Judge.

Appellant was convicted for willfully attempting to evade and defeat a large part of his income taxes for the year 1929 (under the first count of the indictment) and for the year 1930 (under the second count), by making false returns of his income for those years and paying thereon less than the amount of income tax due from him to the government, in violation of 26 U.S.C.A. § 2146 (b) [now 26 U.S.C.A. § 145 and note]. He contends that the evidence was insufficient to sustain a conviction on either of the first two counts of the indictment upon which he was found guilty and sentenced to eighteen months imprisonment and $5,000 fine and costs, the sentences to run concurrently and not consecutively.

It appears that for many years prior to and during the calendar year 1929, Leon M. Gleckman was a citizen of the United States and was a resident of and had his principal place of business at St. Paul, Minn. Prior to 1926, he had never made any returns for income tax purposes, but in 1928 he made returns for the years 1925, 1926, and 1927, showing a lump sum net income without details of $15,000 for each year and paid tax thereon. During 1929 he was a married man, living with his wife, and had three dependents, and his regular annual accounting period for income tax purposes was on the basis of the calendar year and not on the basis of the fiscal year. He was the president of and a stockholder in the Republic Finance Company, a corporation, and drew a salary from that corporation during the year. He also received a profit from sales of stocks and bonds and received rents from property owned by him. These items of salary, stock sales profits, and rents totaled something over $11,000, from which he was entitled to deductions on account of expenses, interest, taxes, and charitable contributions. He made a sworn joint return for himself and his wife of gross income $11,167.78, and deductions of $992.09, leaving net income $10,175.69, calling for $49.02 total tax, which he paid.

In the year 1930 he drew a salary from the Republic Finance Company, received rents from property owned by him, and derived profits from the sale of stocks and bonds; the three items of income amounting to $9,236.56. During this year, however, before any return for tax was made, a tabulation was obtained from the banks where Mr. Gleckman did business, reflecting that many deposits had been entered to his credit during the year, amounting in the aggregate to a large sum of money, and on account of such bank deposits Mr. Gleckman added to the sworn joint return of himself and his wife for the year "income from business, $5,286.53." This sum added to the above $9,236.56 made the return for the year 1930 $14,-523.09, from which he took deductions on account of interest, taxes, and contributions in the sum of $2,091.25, leaving taxable net income $12,431.84, producing a total tax of $185.57, which he paid.

An internal revenue auditor, Mr. Schall, was subsequently assigned to make an audit of the returns for the years 1929 and 1930 and called upon Mr. Gleckman for his books and papers. Mr. Gleckman had kept no records of account of his business reflecting his true income or affording means for the computation thereof, but as he had done business with the Foshay State Bank and the Commercial State Bank, he directed Mr. Tankenoff, a public accountant, and the supervising bookkeeper of the Republic Finance Company, to assist the government's agent to get the bank records and to aid in checking the taxable income. They did not obtain the deposit slips from the Foshay State Bank covering all of the year 1929, but had the record of deposits in that bank for the period from August 23, 1929, to November 1, 1929. The Foshay Bank having failed about that time, Mr. Gleckman's account in the Commercial State Bank became more active and they had the record of numerous deposits in his account at that bank during November and December, 1929. Mr. Tankenoff and the government agent worked together for a period of several weeks attempting to trace to their source the many items which Mr. Gleckman had deposited in the banks in order to eliminate all items which were receipts from capital or other nontaxable transactions. By the production of checks and otherwise, many items shown to have been deposited in the bank account of Mr. Gleckman were explained as arising out of capital or nontaxable transactions and were eliminated. Mr. Tankenoff and the government agent each made up a work sheet covering the

numerous items considered by them and arrived at a balance of $18,036 additional net income for the year 1929 over the amount which had been returned for that year by Mr. Gleckman. The agent proposed excess assessment in that amount, and although Mr. Gleckman said that if he had more time and wanted to go to a great deal more expense he could remember more of the bank deposits, and his attorney declared, in his presence, that Mr. Gleckman did not owe the additional tax; Mr. Gleckman paid the proposed deficiency tax assessment, together with added negligence penalty of 5 per cent. before final assessment, was made. Before the auditor Schall had completed his audit of Mr. Gleckman's return for the year 1930, he was succeeded by another auditor, Mr. Sullivan, and the subsequent investigations revealed very numerous receipts of money by Mr. Gleckman and deposits made by him during each of the years 1929 and 1930, aggregating large sums which had not been disclosed by him. This prosecution followed.

In the first count of the indictment, which charges the willful attempt to evade the income tax for the year 1929, it is alleged that the "defendant had and received gross income" for that year "amounting to more than $5,000.00, to-wit: $164,924.38, derived as follows:

| | | |
|---|---|---|
| Salary | . | $ 7,475.00 |
| Income from business | | 153,539.79 |
| Unidentifiable income deposited in banks (eliminating transfers of funds, loan transactions, salary and rent items): | | |
| Foshay State Bank | $ 71,838.04 | |
| Commercial State Bank | 21,068.54 | |
| Received under false, fictitious and assumed name of Abraham Wynehouse | 15,000.00 | |
| Collected through Journal Square National Bank, Jersey City, New Jersey | 7,500.00 | |
| Unidentifiable income not deposited in banks and disbursed through: | | |
| Havana, Cuba | 5,000.00 | |
| Bennett & Co. | 5,800.00 | |
| Sam Fink | 15,175.00 | |
| Republic Finance Company | 13,000.00 | |
| Total . | $154,381.58 | |
| Less business expenses | 841.79 | |
| | $153,539.79 | |
| Income from partnership—University Cleaners & Dyers | 680.87 | |
| Rents | 1,160.94 | |
| Sale of Stocks and Bonds | 2,067.78 | |
| Total Income | $164,924.38." | |

In the figures so set out there is included a charge that he had understated his salary income in his return for 1929 in the amount of $975 and that he had received the sum of $680.87 from University Cleaners & Dyers, a partnership of which he was a member, and had not included the item in his return.

In response to an order for bill of particulars, the District Attorney presented in great detail an itemized list of all the deposits made in Gleckman's accounts at the two banks during the years 1929 and 1930 and explained that the government had been able to ascertain that some deposits made by Mr. Gleckman during these years did not represent income and were, therefore, eliminated. He also specifically described many other items of deposit and identified them by their source so far as known to the government. As to the four items of "unidentifiable income" referred to in this count as "not deposited in banks" aggregating $38,975, it was stated in the bill of particulars that the income "consists of moneys received by the defendant as evidenced by the fact that he used the same for his own use and benefit" and the manner in which he so used them was set forth in detail. But it was repeated throughout the bill of particulars that "the nature of the transactions whereby they (the various items of receipts and deposits) were received are more peculiarly within the knowledge of the defendant than the government, and, cannot, therefore, now be stated." No objection was made to the bill of particulars so presented.

It appeared on the trial that there had been deposits made to the credit of Mr. and Mrs. Gleckman in the two banks during 1929 amounting to $156,822.06, of which the auditor was able to trace and eliminate $63,915.48 as nontaxable loans, stock and bond transactions, and rents and salary items, leaving a balance of untraceable cash and unexplained deposits of $92,906.58.

It also appeared that Mr. Gleckman had received the two items of $15,000 and $7,500, respectively, referred to in the first count of the indictment, and as to three of the other items "not deposited in banks" identified as Havana, Cuba, $5,000, Bennett & Co., $5,800, Republic Finance Company $13,000, it appeared that Mr. Gleckman had sent $5,000 to the Mill Creek Distillery in Havana, Cuba, and

had also paid in stock market transac- tions to Bennett & Co. $5,800, and had paid to Republic Finance Company in the purchase of stock and otherwise $13,000, none of which moneys came from his bank accounts. As to the item "Sam Fink $15,175," the claim that it represented an item of taxable income for the year in question was withdrawn by the government.

There was substantial evidence that the salary drawn by Mr. Gleckman from the Republic Finance Company was $7,475 instead of $6,500 as returned and that he was in fact a member of the partnership University Cleaners & Dyers and had received $680.87 as his distributive share of its income, not included in his return for the year. It also appears that on October 10, 1929, Mr. Gleckman had signed and delivered to the Commercial State Bank a property statement containing the recitation that it was made "for the purpose of obtaining loans and discounting paper and otherwise procuring credit from time to time" and was "a true and correct statement of my financial condition on 10–10–1929." In the upper right hand corner appeared "Individual (Merchant)" and the statement showed "net worth $64,200.00." Later and on March 25, 1930, Mr. Gleckman signed a similar property statement to the same bank, similarly marked, "Individual (Merchant)," disclosing net worth as of the latter date $217,373.

There was evidence that in the summer of 1928 Mr. Gleckman went to Mr. Anderson, who was then Assistant United States District Attorney, and said that he had learned that there had been a ruling to the effect that income from illegal liquor transactions was taxable. Following upon that conversation, Mr. Anderson, pursuant to employment from Mr. Gleckman, aided in making out Mr. Gleckman's income tax returns for the years 1925, 1926, and 1927. He also prepared a statement for Mr. Gleckman to the tax collector for the year 1928 to the effect that Mr. Gleckman had no taxable income in that year. He also assisted in making out the returns for the years 1929, 1930, and 1931. Mr. Anderson reported the statement of Mr. Gleckman concerning the taxability of income derived from illegal liquor transactions to the chief deputy collector.

On the part of the defendant, testimony was given by numerous witnesses tending to show that besides the receipts shown on his tax returns Mr. Gleckman had received sums of money in 1927, 1928, and 1929 by way of loans made to him and repayment of advancements and loans which he had made to others and through liquidation of property interests and surrender and cancellation of stock in the Republic Finance Company. It was brought out that he had large investments in the stock of the Mill Creek Distillery of Havana, Cuba, and also an interest in the Greendale Distillery in Canada—both concerns being actively engaged in the manufacture of whisky, and that he received a large sum in 1929 from the sale of his interests in the Greendale Distillery. The claimed receipts were tabulated by Mr. Tankenoff for defendant and were shown to aggregate $74,540 in addition to the items included in the return for the year, which, with corrections claimed, amounted to $10,267.78, making a total of $84,807.78. Mr. Tankenoff also computed the expenditures for the year as summarized from the testimony at $64,148.66. There was testimony for the defendant to the effect that the items of alleged gross income $15,000 received under the assumed name of Abraham Wynehouse and the $7,500 collected through the Journal Square National Bank, Jersey City, N. J., were received from the sale of the interest of defendant in the Greendale Distillery and were capital transactions and were nontaxable.

There was no direct testimony to show what business transacted by Mr. Gleckman had produced the large sums of money that accrued to him in addition to the items reported in his return. There was no direct proof of any specific deals or transactions outside of those included in his return which were shown to have netted Mr. Gleckman any gains or profits. All of the testimony adduced for the defendant concerned the large items of receipts that accrued from nontaxable transactions, and none of the government's witnesses testified to any particular gain accruing to Mr. Gleckman from any specific transactions besides those reported by him. There was no direct testimony that he received any dividends from his distillery or other stocks.

And it is the contention of the appellant that the prosecution must fail on

that account. It is conceded that proper foundation was laid for the receipt in evidence of the deposit slips and ledger sheets of the banks and that they were admissible if relevant and correctly show the transactions of Mr. and Mrs. Gleckman with the banks during the years involved. But the argument is that as the government could not prove where or how or from whom Mr. Gleckman got the sums aggregating more than $150,000 shown to have come into his hands during the year over and above all the items eliminated by the auditors and all of the items included in his income report, it could not be found that he earned it or that it came to him as gains or profits. The point is particularly insisted upon with reference to the untraceable items and the cash items of the bank deposits. Such items it is said may just as well have been drawn from nontaxable transactions as from services or business.

Undoubtedly, the burden was upon the government to prove that an income tax was due from Mr. Gleckman for the years in question over and above the amount returned—he could not be guilty of attempting to evade or defeat a tax unless some tax was due. O'Brien v. United States (C.C.A.) 51 F.(2d) 193. It may be conceded also that the bare fact, standing alone, that a man has deposited a sum of money in a bank would not prove that he owed income tax on the amount; nor would the bare fact that he received and cashed a check for a large amount, in and of itself, suffice to establish that income tax was due on account of it.

On the other hand, if it be shown that a man has a business or calling of a lucrative nature and is constantly, day by day and month by month, receiving moneys and depositing them to his account and checking against them for his own uses, there is most potent testimony that he has income, and, if the amount exceeds exemptions and deductions, that the income is taxable. United States v. Miro (C.C.A.) 60 F.(2d) 58; Oliver v. United States (C.C.A.) 54 F.(2d) 48, certiorari denied, 285 U.S. 543, 52 S.Ct. 393, 76 L.Ed. 935; Guzik v. United States (C.C.A.) 54 F.(2d) 618, certiorari denied, 285 U.S. 545, 52 S.Ct. 395, 76 L.Ed. 937; Capone v. United States (C.C.A.7) 51 F.(2d) 609, 619, 76 A.L.R. 1534; Orzechowski v. United States (C.C.A.3)

37 F.(2d) 713. See, also, Chadick v. United States (C.C.A.5) 77 F.(2d) 961; Paschen v. United States (C.C.A.) 70 F.(2d) 491. We think there was in this case substantial circumstantial evidence that Mr. Gleckman did have a business outside of that described in his return and that at least some of his deposits were derived from it. He first began to concern himself about income taxes in the summer of 1928, when he learned that there had been a ruling to the effect that income from illegal liquor transactions was taxable. It was upon that information that he made returns and paid taxes upon income fixed at $15,000 a year for the three years, 1925, 1926, and 1927, and the only fair inference is that he was engaged in illegal liquor transactions. On his property statements in the year 1929 there appears over his signature a description of himself as a "merchant," which is a term broad enough to include one engaged in illegal liquor transactions. In his income tax return for 1930 a computation was made of all the bank deposits that he had made during the year and an estimate was made of the items in the account derived from capital or nontaxable transactions, and then in his sworn return he reported "income from business $5,286.53" which was an amount representing a percentage of the aggregate bank deposits less the estimated nontaxable items. There could be no reasonable inference to be drawn from that representation except that moneys were going into his bank account derived from his business.

His property statements show that his net worth had increased between October 10, 1929, and March 25, 1930, from $64,200 to $217,373, or $153,173. There was evidence that when Mr. Gleckman presented the earlier property statement to the bank he stated that he had more accounts receivable than were listed and that he had some distilleries in Canada or Cuba. An analytical comparison between the two statements makes it clear that there were omissions in the first statement of property included in the second, and substantially different valuations were made of the same properties—those in the second statement being higher. But notwithstanding all allowances, the two property statements afforded some testimony of largely increased net worth between the two dates. A property statement for November 13, 1931, showed

somewhat less net worth at that time and the jury acquitted on a third count of the indictment which charged attempting to evade and defeat a 1931 tax.

For the year 1929, Mr. Gleckman's agent, Mr. Tankenoff, worked for weeks with the government auditor attempting to find explanations of the items of the deposits that would justify eliminating them from the taxable income, and when Mr. Gleckman said that if he had more time and wanted to go to a great deal more expense he could remember more of the bank deposits, he made it clear that he understood the attempts to explain and eliminate the nontaxable items and could not then point out any additional items that were not derived from the business and taxable accordingly. Although the mere payment of the excess assessment made against him for 1929 might not, of itself, have afforded very convincing proof that he believed he owed the tax, the circumstances under which the amount was computed by his own agent and the tax was paid by him before assessment tended to show that the moneys deposited in the banks were received by Mr. Gleckman as income from business.

The bank deposits and large items of receipts by Mr. Gleckman do not, therefore, stand entirely alone as the sole proof of the existence of a tax due from him, but they are identified with business carried on by him and so are sufficiently shown to be of a taxable nature.

We find there was substantial evidence to show that there was some tax due from Mr. Gleckman for the year 1929 over and above that returned by him and that there was some substantial testimony to justify each of the assumptions in the hypothetical question propounded to the government accountants who had so long and diligently studied Mr. and Mrs. Gleckman's accounts.

The hypothetical question so propounded to the government accountants was as follows:

."Q. Mr. Schall, assuming that a resident of the State of Minnesota, who during the calendar year of 1929, and on December 31, 1929, was married and living with his wife and had three dependents, and whose residence and principal place of business were at St. Paul, Minnesota, and whose regular annual accounting period was on the basis of the calendar year, and not on the basis of a fiscal year, and assuming that such person maintained and kept no such accounting records that would enable him to make an income tax return showing his true income or as would enable the Government to compute his true income, and assume that such person derived and received a gross income, during the calendar year of 1929, as follows: Income from salary $7,350.00; income from partnership known as University Cleaners & Dyers, $680.87; income from rents $3,000; income from sale of stocks and bonds, $2,067.78; and assume further that such person received a gross income from business from unidentifiable sources, which he deposited from time to time during the calendar year 1929, in his bank accounts, and that such deposits therein aggregated $92,906.58, after eliminating such deposits as could be identified either as identified income, loans, or return of capital; and assume further that such person received during said calendar year a gross income from business and other unidentifiable sources as cash items, or its equivalent, which he did not deposit in his said bank accounts, and that such cash items not deposited aggregated $61,475.00, and assume further that such person was entitled to and allowed by the provisions of the Revenue Act of 1928, the following deductions:

"1. As against the rental income of $3,000.00, a reduction of $1,836.06, consisting of interest $242.00, taxes $836.88, insurance $268.18, and depreciation $400.00.

"2. As against business income a reduction of $841.79, consisting of $426.79 for rent and lights, $202.34 for phone service, and $212.68 for miscellaneous expenses.

"3. Other deductions of $482.71, consisting of $495.68 interest paid, $337.03 taxes paid, and contributions to the St. Paul Community Chest of $25.00, and contribution to the Palestine Relief Fund of $25.00.

"What amount of income tax would you say such person owed and should have paid to the Government for that year?"

The witness answered that the tax due from defendant for said year was $30,174.

■ Although complaint is made against the hypothetical question, it appears to have been competent. It called for a computation merely, to be made by ex-

perts well qualified to make it. The amount of the tax which it was charged was attempted to be evaded was not of the gist of the offense, and, as the trial court instructed: "Proof of the amounts of the defendant's income need not measure up to the amounts stated in the indictment." The testimony did not invade the province of the jury.

It is apparent that when a taxpayer like Mr. Gleckman engages in such a multiplicity of financial transactions in any year, as he did in 1929 and 1930, and received so many large and small items of money, running up to a hundred and twenty-five or a hundred and fifty thousand dollars, as indicated by his bank accounts, and the testimony which he offered, and if he keeps no accounts whatever and avails himself of his right not to answer questions; it would not be possible for any complete account of his business to be made up for the government by any kind of skilled accountancy. More especially, where the business transacted may be of an illegal nature. There is reflected in reported cases that in instances where the government has not brought certain habitual law violators to effective punishment for such law violation, there has been more success in disclosing the fruits of the crime—the income, and punishing for attempts to evade the tax upon it. It is scarcely conceivable that this could be done, however, if it were necessary for the government to prove the complete debit and credit account of such an offender—all the expenses, as well as all the items of receipts. Nor is such impossible elaboration required. Taxation is a practical matter and taxpayers do not terminate all duty to pay income tax by willfully failing to keep account of their income. The testimony is clear that in such cases accountants can and do arrive at a basis of assessment for tax upon analysis of bank accounts and the elimination of receipts from capital and other nontaxable sources.

■ The gist of the charge here is that there was a tax due and a willful attempt to evade it. Testimony sufficient to satisfy the jury beyond a reasonable doubt upon the issue was all that was required and the proof that large amounts were taken out of some kind of business and were used as his own by the defendant, considered together with the circumstantial evidence referred to and the evidence tending to show that he had unreported net gains during the year and that his net worth was increased thereby, required submission to the jury.

■ Complaint is made, based upon four assignments of error, concerning the cross-examination of the defendant's witness Anderson by counsel for the government. It appears that in the cross-examination on defendant's behalf of the government's accountant and investigator, Sullivan, it was brought out that Mr. Anderson had appeared before Mr. Sullivan in response to notice to produce documents and to answer interrogatories about Mr. Gleckman's tax returns. A transcript had been made of the questions put to Mr. Anderson and his answers, which transcript was offered by and read in evidence on behalf of the defendant. It appeared that Mr. Anderson was accompanied at the hearing by his attorney, a Mr. Peterson. The transcript so put in evidence by defendant showed that Mr. Anderson was asked what records Mr. Gleckman had produced to show the sources (of receipts in) 1929 to 1931; and whether Mr. Gleckman had made to Mr. Anderson any explanation of his bank deposits during 1929 to 1931 when Mr. Anderson was preparing the income tax returns covering those years; and whether Mr. Gleckman had mentioned any investment he had in the Mill Creek Distillery or in the St. Paul Boxing Club or University Dry Cleaners or in the business known as Ben's Store at Chippewa Falls; or any business transacted with several named persons. To each of the questions Mr. Peterson made objection and said "on advice of counsel witness refuses to testify, the point being that it involves a privilege and a confidence and the ethics of counsel as between himself and his client particularly so in this proceeding as an answer might tend to a witnessing of Leon Gleckman against himself under the law." And so Mr. Anderson did refuse to make any answers to the questions. At about the same time Mr. Gleckman was asked to appear before Mr. Sullivan and "explain his income" and Mr. Anderson very carefully prepared a statement which Mr. Gleckman read before Mr. Sullivan and then "walked out of the room," in effect refusing to answer questions. It is not apparent why the defendant brought these

matters into the case—but it cannot be said that they were immaterial. On cross-examination of Mr. Anderson by counsel for the government some questions were directed to Mr. Anderson for the purpose of eliciting from him just what objection he had had to answering questions about sources and bases of income tax returns he had helped Mr. Gleckman to make up, and in asking the questions the government counsel read and based. a question upon the transcript of the proceedings that had been offered in evidence by the defendant. The witness Anderson, without justification, accused counsel of misquoting the transcript, particularly the objection that had been made by Mr. Peterson. Whereupon the government counsel put the question to Mr. Anderson whether Mr. Anderson's objections to answering Mr. Sullivan's questions had not been, in substance, "an objection that the defendant through your answering that question, might tend to criminate himself." It is not indicated that there was any intention to go further than to ask if such was not Mr. Anderson's understanding of the words used by his lawyer Mr. Peterson appearing in the transcript offered by the defendant, and it is significant that Mr. Anderson answered "that interpretation can be made of that language." The charge is that this was misconduct of government's counsel amounting to an invasion of the constitutional right of Mr. Gleckman not to be compelled to testify against himself. We find no misconduct on the part of government's counsel and nothing in his questions to either directly or indirectly prejudice Mr. Gleckman before the jury. The court instructed the jury that "the fact that the defendant has not seen fit to testify in this case cannot be considered by you as any evidence against him. The government must prove him guilty. He is not required to establish his innocence." There was no request for any instruction concerning the fact that Mr. Gleckman and his attorney had refused to answer the government agent's questions, nor the grounds assigned by them for such refusal. The fact had been brought out by defendant and there is no reason to suppose that the import and significance of it was not discussed by counsel before the jury. No error is found to sustain any of these assignments.

It is contended that the demurrer to the first. count of the indictment should have been sustained. The first count of the indictment is in substantially the same form as was presented in Capone v. United States, 56 F.(2d) 927, where it was fully considered by the Court of Appeals for the Seventh Circuit and approved. We are in accord with the conclusion reached by that court and find no flaw in the first count of the indictment.

As to the second count of the indictment and the verdict and judgment thereon, practically the same considerations as we have found controlling in regard to the first count are applicable. Although the amounts of the receipts accruing to Mr. Gleckman during the year 1930 and the bank deposits during that year, both as reflected in the testimony offered by the government and in defendant's testimony, are different from those shown for the year 1929, no different questions are presented. We think the second count of the indictment was good against the demurrer and that the evidence was sufficient to take the issue raised by it to the jury. The instructions given fairly and correctly explain the issues and the law applicable, and no exceptions were taken to them.

The judgment is affirmed.

On Taxation of Costs.

Leon M. Gleckman having been convicted of willfully attempting to evade income taxes due from him to the United States was sentenced, among other things, to pay the costs of the prosecution, in accordance with 28 U.S.C.A. § 822. Thereafter affidavit for taxation of the costs was filed by the United States District Attorney and notice of the intention of the clerk to tax in accordance with the affidavit was duly served upon the defendant. The defendant filed objections to the proposed taxation of the costs and the clerk, having taxed and entered the costs in the sum of $6,193.30 over the objections of the defendant, the defendant appealed to the District Court and moved to have the costs retaxed. The court examined the files and records and heard the parties and approved and confirmed the taxation of costs as made and entered by the clerk. Mr. Gleckman has prosecuted this appeal to reverse the order approving the taxation of costs and to obtain a retaxation, the appeal having

been consolidated with the appeal prosecuted by Mr. Gleckman from the judgment of conviction. It appears that there were two jury trials upon the indictment against Mr. Gleckman, said indictment containing three counts. On the first trial the jury disagreed. On the second trial Mr. Gleckman was convicted on the first and second counts and acquitted on the third. On this appeal from the order refusing to retax costs, we have the record of all of the proceedings on the second trial before us.

Although many assignments of error were laid against the various items of costs taxed, we have considered only the points presented and argued in appellant's brief. Franklin Savings Bank v. Garot (C.C.A.8) 69 F.(2d) 487; Carpenter v. Connecticut General Life Insurance Co. (C.C.A.10) 68 F.(2d) 69, 73; Travelers' Insurance Company v. Bancroft (C.C.A.10) 65 F.(2d) 963; United States ex rel. Mastoras v. McCandless (C.C.A.3) 61 F.(2d) 366; Allen v. Hudson (C.C.A.8) 35 F.(2d) 330.

By appropriate assignment of error (18) appellant presents that the court erred in taxing as costs of the prosecution the items: "Jury fees," "jury mileage," "jury bailiffs' fees," "jury meals and lodging," "jury professional services," "marshal's fees," and "Judge Bell, traveling and maintenance." These items seem self-explanatory, being the expense incurred by the government in providing a tribunal, that is, a judge and jury for the trial of the case, though it may be stated "jury professional services," were amounts paid to a doctor for his services to several of the petit jurors during the trials, and the items total about $2,500.

We do not find any authority for holding that such governmental expense can be taxed against one convicted of a criminal offense as "costs of the prosecution" in the absence of statute or established local practice. The expression "costs of prosecution" means such items of costs as are taxable by statute or by established practice or rule of court based on statute, and in the federal courts, where no federal statute is found to be directly applicable, recourse may sometimes be had to the statutes and practice of the state. See Henkel v. Chicago, St. P., M. & O. Ry. Co., 284 U.S. 444, 52 S.Ct. 223, 76 L.Ed. 386, Ex parte Peterson, 253 U.S. 300, 316, 40 S.Ct. 543, 64 L.Ed. 919, U. S. v. Minneapolis, St. P. & S. S. M. Ry. Co. (D.C.) 235 F. 951, 954, and cases cited in these opinions. It does not include the general expense of maintaining the system of courts and the administration of justice, all of which is an ordinary burden of government. That the enumerated items could not be taxed as costs was expressly held in United States v. Murphy (D.C.) 59 F.(2d) 734, and we are satisfied with the conclusions concerning taxation of costs there indicated. See, also, U. S. v. Wilson (C.C.) 193 F. 1007; State v. Morehart, 149 Minn. 432, 434, 183 N.W. 960; Board of Com'rs v. Board of Com'rs, 84 Minn. 267, 269, 87 N.W. 846; McLean v. People, 66 Colo. 486, 497, 180 P. 676; Saunders v. People, 63 Colo. 241, 165 P. 781; People v. Kennedy, 58 Mich. 372, 373, 25 N.W. 318; Stanton County v. Madison County, 10 Neb. 304, 308, 4 N.W. 1055, citing 1 Bouvier Law Dict. 370; Corpus Juris, vol. 15, § 833, page 330.

The taxation of these items is reversed with direction that they be eliminated from the bill of costs.

### Witness Michael F. Malone.

Another assignment of error (19) questions the costs taxed on account of the attendance of the witness Michael F. Malone, New York City, April 3, to May 19th, fifty days, fees $250, mileage $115.-38; total $365.38. The objections are: (1) That as Mr. Malone was a government employee the amount taxable on account of his attendance was limited by 28 U.S.C.A. § 604 to "his necessary expenses, stated in items and sworn to, in going, returning, and attendance on the court; * * * but no mileage or other compensation in addition to his salary, shall in any case be allowed"; (2) that the amount taxable on account of the attendance of this witness should have been limited to $1.50 for each day's attendance under 28 U.S.C.A. § 601; (3) that the amount of mileage taxable on account of this witness should have been limited to the miles traveled by him within the district where the trial was held.

(1) The testimony of the witness Darvin discloses that Mr. Malone was in the employ of the government as an investigator, associated with Mr. Sullivan, and the taxation of costs on account of his attendance as a witness is governed

entirely by 28 U.S.C.A. § 604. The provisions of that section are directed especially to the allowances for the attendance of government employees as witnesses and completely cover the subject. U. S. v. Sanborn, 135 U.S. 271, 281, 10 S.Ct. 812, 34 L.Ed. 112; Deal v. U. S. (C.C.A.9) 11 F.(2d) 3, affirmed 274 U.S. 277, 284, 47 S.Ct. 613, 71 L.Ed. 1045. It appears that he was not required to testify as a witness because agreement was reached between counsel "that foundation did not have to be laid," but his attendance was shown by the affidavit to have been necessary and the item of costs on account thereof should be retaxed in accord with the statute. Kirby v. U. S., for and on behalf of Crow Tribe of Indians (C.C.A.9) 273 F. 391, 397; U. S. v. Murphy (D.C.) 59 F.(2d) 734; Fed. I. Credit Bank v. Mitchell (D.C.) 38 F.(2d) 824; U. S. v. Miller (D.C.) 223 F. 183; compare also U. S. v. Wilson (D.C.) 193 F. 1007. That is, there should be taxed, on account of this witness, his necessary expenses for traveling and subsistence, and no more.

▪ (2) The general limitations contained in 28 U.S.C.A. § 601, which limit the fees of witnesses generally to $1.50 for each day's attendance do not control against the specific provisions of 28 U.S.C.A. § 604, applicable to government employees. Such employees are to be paid their necessary expenses as specially provided, even though they may exceed $1.50 per day.

▪ (3) The mileage allowable on account of the attendance of this witness is not limited to the travel within the district. By the provisions of 28 U.S.C.A. § 654 subpœnas for witnesses in criminal cases may "run into any other district" and there is no limitation of the expense for traveling to the travel within the district, either express or implied. The taxation for necessary expense of travel for this witness is sustained.

Witnesses Goepfert and Huebsch.

Objection is also made to the taxation of costs on account of the attendance of Paul J. Goepfert and Rose Huebsch, (20), employees of the government. On retaxation of costs, which we direct to be made, the amounts taxable on account of the attendance of these witnesses should be on the same basis as prescribed for Mr. Malone.

Sundry Other Witnesses.

Objection is also made to taxation of mileage costs on account of the attendance of Frank Hegner, H. R. Jorgensen, Richard A. Weingartner, and H. T. Henryson, (21), on the ground that mileage is calculated from points outside the district. The assignment is overruled.

Objection is also made to taxation of costs for per diem fees on account of the attendance of R. A. Weingartner (Second trial) and H. T. Henryson (second trial). This assignment appears to be well taken as to Henryson (second trial) as the allowance was $9 for four days' attendance and it should have been $6. The assignment appears to be without merit as to Weingartner (second trial), as the allowance was $6 for four days' attendance.

The order denying the motion to retax costs is reversed with directions to retax the costs in accordance herewith.