L. J. Christopher, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

L. J. Christopher Co. of California, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

L. J. Christopher Co. of Delaware, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 8931, 16085, and 17448. Promulgated October 2, 1928.

*George E. H. Goodner, Esq.*, for the petitioners.

*George H. Koster, C. P. A.*, and *I. R. Blaisdell, Esq.*, for the respondent.

732

OPINION.

MILLIKEN: Respondent has determined that L. J. Christopher received in the year 1921 from the California Company taxable dividends in the net amount of $192,872.67, computed as follows:

2/15/1921—Balance due L. J. Christopher Co. (Calif. Corp.) _____ $66,464.81
2/15/1921—Cash received from L. J. Christopher Co. of Delaware
           on sale of assets by the L. J. Christopher Co. of Cali-
           fornia to the L. J. Christopher Co. of Delaware_____ 125,000.00
         Cash received from L. J. Christopher Co. of Delaware in
           cancellation of 250 shares preferred stock, the property
           of L. J. Christopher Co. of California_____ 25,000.00
         Profit realized on sale of assets to Delaware Corp. by
           California Corp_____ 12,093.46
         Accrued interest on Liberty Bonds sold Mr. Christopher
           during year_____ 174.22

                                                 228,732.49

Less:
     General expense_____ $3.70
     Unexpired taxes_____ 2,022.06
     Unexpired insurance_____ 4,512.78
     Federal taxes paid by Mr. Christopher_____ 29,321.28
                                          35,859.82

                                                 192,872.67

In the brief filed in his behalf in these proceedings, L. J. Christopher contends (1) that the above net amount, if a dividend, was a liquidating dividend and is not taxable since he has not recovered the cost of his stock; (2) that said net amount was not a dividend but was a liability to and an asset of the corporation, and (3) that if a dividend, the total net amount of $192,872.67 should be reduced by the sum of $34,344.53, the net amount received by him from the corporation prior to January 1, 1921.

With respect to the first contention, it is to be observed that the California Company has not been dissolved, that it is now in active operation controlling and managing the assets reserved in the sale to the Delaware Company, and that so far as the record discloses, this petitioner has surrendered none of his stock for cancellation. Counsel for petitioner discusses this issue as though it is controlled by section 201 (c) of the Revenue Act of 1918, when in fact the deficiency should be determined under section 201 of the Revenue Act of 1921. The pertinent parts of this section read:

SEC. 201. (a) That the term "dividend" when used in this title (except in paragraph (10) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except a distribution

made by a personal service corporation out of earnings or profits accumulated since December 31, 1917, and prior to January 1, 1922.

\* \* \* \* \* \* \*

(c) Any distribution (whether in cash or other property) made by a corporation to its shareholders or members otherwise than out of (1) earnings or profits accumulated since February 28, 1913, or (2) earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, shall be applied against and reduce the basis provided in section 202 for the purpose of ascertaining the gain derived or the loss sustained from the sale or other disposition of the stock or shares by the distributee.

The first question is whether these withdrawals by this petitioner fall within the term " distribution " as used in section 201. It is contended that this must be answered in the negative, since it appears that the California Company made no formal declarations of dividends and also because the various withdrawals were entered on the books of the California Company as charges against this petitioner.

We are dealing with a one man corporation, which so far as the record discloses, was conducted by L. J. Christopher as though it was an individual business. That portion of his personal account with the California Company which was introduced in evidence discloses that although his salary was in the amount of $1,000 per month, he did not withdraw any part of it. On the other hand, he withdrew money and other items whenever, it appears, he needed them and these withdrawals were credited by his salary and other items including Victory bonds. Another pertinent fact is that the California Company from the date of its organization to and including the year 1921, made no formal declaration of a single dividend. Since during all this time this petitioner was the owner of practically all the capital stock of the California Company and had absolute control, and since the only distribution of earnings made in these seven years was by reason of these withdrawals, we are clearly of the opinion that they were distributions made by the California Company as that term is used in section 201. See *Chattanooga Savings Bank* v. *Brewer* (C. C. A.) 17 Fed. (2d) 79; *Bockius Realty Co.*, 1 B. T. A. 939; *Walle & Co., Ltd.*, 1 B. T. A. 1064; *A. C. McLoch & Co.*, 11 B. T. A. 816; and *Moline Dispatch Publishing Co.*, 11 B. T. A., 934.

There is no merit in the contention that the withdrawals created a debt in favor of the California Company. There is nothing in the record that to the slightest degree indicates that L. J. Christopher executed any notes or other evidences of indebtedness or that he paid any interest thereon or that interest was charged to his account. In a protest filed by him with respondent on July 7, 1925, he stated under oath: " That he has made no accounting to the California Company for the monies received through the sale of the assets to the Delaware Company; that no dividend has been declared by the California

Company during 1921 or any subsequent years." Similar contentions as to the effect of such charges were made and rejected in *Chattanooga Savings Bank* v. *Brewer & Co., Ltd.*, and *Moline Dispatch Publishing Co.*, both *supra*. Since there is no evidence in the record which indicates that L. J. Christopher intended to repay these withdrawals, the mere entries made on the books of charges against him can not convert into an asset what was in fact a distribution. In 1924 and after an examination of the books of the corporation by a revenue agent, additional entries were made to indicate that the withdrawals were held by L. J. Christopher as the agent of the California Company. It thus appears that on the date of the making of the new entries the theory of personal indebtedness was abandoned and the theory of agency was substituted. The making of these later entries we regard as an afterthought and as of no importance except to the extent that they indicate a new theory to avoid tax liability.

Petitioner's contention that the amount of the distribution as determined by respondent ($192,872.67) should be reduced by the sum of $34,344.53, which is the net charge against L. J. Christopher as of December 31, 1920, is well taken. The petitioner further faintly contends that he should not be charged with the item of $12,093.46. The burden rests upon petitioner to overcome the findings of respondent on this point. Although he testified at the hearing, he gave no testimony with respect to this item. It is asserted that since this item does not appear on the transcript of his account as it appears on the ledger of the California Company, we should accept this negative evidence as sufficient to overthrow respondent's determination. To this we can not agree. It may be pointed out, however, that the entries made in 1924 contain a charge against this petitioner as of 1921 of $62,590.41 with the explanation " various a/cs." For all we know, this entry may contain the charge of $12,093.46.

It is essential to the taxation of a distribution by a corporation as a dividend under section 201 that it was paid " out of its earnings and profits accumulated since February 28, 1913." As the California Company was organized in 1914, it only remains to discuss whether, under the facts presented by the record, petitioner has met the burden of proof imposed upon him. Respondent has made his determination to the effect that the distributions were paid out of earnings and profits and petitioner has introduced no evidence whatever to the effect that they were not so paid. The books of the corporation were available (in fact adjournment of the hearing was taken to enable counsel to investigate these very books) and no attempt was made to introduce them or extracts from them relative to earnings or profits. Respondent in a statement attached to the 60-day letter

sent to the California Company sets forth a surplus and undivided profit account which is in excess of the distributions as here determined. In the absence of evidence, respondent must be affirmed on this point. Subject to the deduction of the amount of $34,344.53 above referred to, respondent's action in the proceeding of L. J. Christopher is affirmed.

The California Company pleads that the assessment of the deficiency determined against it is barred by the statute of limitations. The Delaware Company makes a similar plea. These allegations were denied by respondent and respondent thereupon placed in evidence the "waivers" set forth in the findings of fact. It is not necessary for us to pass upon the validity of these waivers. See, however, *Trustees for Ohio & Big Sandy Coal Co.*, 9 B. T. A. 617; *Keeler Brass Co.*, 10 B. T. A. 3; and *Sugar Run Coal Mining Co.*, 11 B. T. A. 587. It is sufficient to point out that there is no evidence in the record as to when the income and profits-tax returns of these petitioners were filed. The contention that everyone is presumed not to have violated the law is without merit when applied to these proceedings, since the Revenue Act of 1921 (sections 241 and 227) provides that the collector may grant a reasonable extension of time, not exceeding six months, for the filing of returns. This precise question was decided adversely to petitioner's contention in *Edward M. Lawrence*, 3 B. T. A. 40. Cf. *Lawrence v. Ham*, 19 Fed. (2d) 643. Since it does not appear that the assessment of these deficiencies is barred by limitations, it follows that collection is not barred. See *Friend M. Aiken*, 10 B. T. A. 553, and *Sugar Run Coal Mining Co.*, *supra*.

The contentions of the California Company that the transactions between it and the Delaware Company did not constitute a sale but did constitute reorganization are not pressed by petitioner, are in direct conflict with the evidence, and need not be considered further. The California Company further contends that respondent erred in excluding from cost, good will acquired by it from L. J. Christopher and by including in the purchase price the sum of $12,093.46, which it received from the Delaware Company under the conditions set forth in the findings of fact.

We are convinced that the private business of L. J. Christopher had at the time of the organization of the California Company a good will which possessed value and that this value was included in the assets for which the stock of the corporation was issued. The question for decision is what its value was. The books of L. J. Christopher are lost and we are compelled to resort to the memories of witnesses. L. J. Christopher testified that in 1914 he was worth approximately $1,000,000, that three-fourths of this amount resulted from the business which he incorporated, and that the earnings of

the business previous to incorporation ran from $30,000 to $40,000 a year. When pressed for dates and amounts, he became uncertain and contradictory. He could not state what were the net profits of his business for the years 1910, 1911, 1912, and 1913. On direct examination, he stated the value of his business in 1914 was "about $400,000 or $500,000." When asked on cross-examination what assets composed his net worth of $1,000,000, he testified that his plant, real estate alone, was worth $500,000 or $600,000 and this in the face of the fact that this same real estate was turned into the corporation at a value of $251,023.16. No paid-in surplus is or has ever been claimed by reason of the value of this real estate. On the other hand, the manager of the business prior to the organization of the California Company and thereafter of that corporation up to July, 1920, who had full charge of the business and was familiar with its activities and its books, was by no means certain what, if any, profits were made in 1913 and 1914. He stated that according to his memory no money was lost prior to 1914. If large profits had been made in these years, he certainly would have recalled them, since he testified from the same memory that the California Company lost about $30,000 in 1915 and about the same amount in 1916. Neither are we impressed with the testimony of this witness to the effect that the value of the business of any small wholesale ice cream concern over actual investment was 25 cents for each gallon sold during the year and that the value of the good will of a large established business was worth at least 50 cents for every gallon sold during the year. These statements were made without qualification—it mattered not whether the ice cream was sold at a loss or at a profit. On cross-examination, he stated that he knew of no sale comparable to the sale of the California Company to the Delaware Company. However, we are impressed by the facts that L. J. Christopher started his business with an investment of about $50,000 in 1887, that it grew in value until in 1914 it was worth approximately $400,000; that he had a trade-name that was valuable, and that he had extended his trade to outside cities and towns. We also recognize the fact that since the books involving these transactions are lost, we must resort to the memories of the various witnesses. While book value is of little weight, we accept the entries on the books of the California Company as the value placed upon the good will by the parties at the time of the transfer and fix the value of the good will as of that date at $17,028.82. In computing the profit on sale to the Delaware Company, this amount should be added to cost.

It is the contention of this petitioner that since it paid $12,093.46 for goods which were thereafter turned over to the Delaware Company, and was reimbursed by that company in precisely the same amount, no gain was made on the transaction. This is not precisely

the question presented. The issues are what gain the California Company made on its sale to the Delaware Company, and whether this amount was included in the cost of that sale by petitioner in its tax return or by respondent in his determination. It may be pointed out that while the bill of sale includes " all property " with certain well defined exceptions, and while these goods do not fall within these exceptions, yet the " goods, wares, merchandise, and materials " sold were those then " in and about " the premises on which the plant was located and that the goods involved were not then so situated. The paper is inartificially drawn and we are impressed by the construction placed upon it by the parties at the time. It is highly improbable that the vendee would have made an additional payment for goods it had already bought and paid for, even though the same person was president of both corporations. We are of the opinion that these goods were not included in the assets sold for the approximate price of $250,000 and that no gain should be determined by reason thereof.

The Delaware Company asserts, first, that respondent erred in excluding from its invested capital good will acquired by it from the California Company. While the bill of sale recites that the good will of the California Company was a part of the assets sold to the Delaware Company, there is no evidence in the record which in any way shows the value of such good will, if indeed it had any value. The fact that the good will of L. J. Christopher had value in 1914, is no evidence of the fact that the California Company had good will of value in 1921, or if it had value, what that value then was in that year. The value of the good will acquired by the Delaware Company could easily have been proven if such value indeed existed. The books of the California Company we have pointed out were accessible. We know nothing relative to the earnings of the California Company during these years, except that its manager testified that to the best of his recollection the company lost about $30,000 in the year 1915 and about the same amount in 1916. Respondent has determined that the alleged good will of the California Company had no value in 1921, and petitioner has introduced no evidence which indicates that his finding was erroneous.

Next, this petitioner contends that it is entitled to special assessment under section 328 of the Revenue Act of 1921. There is no evidence in the record to the effect that it was impossible to determine petitioner's invested capital. In fact, respondent has determined it. Nor is there any evidence to the effect that a mixed aggregate of tangible and intangible property was paid in for stock and that the respective values of the several classes of property can not be determined. There is no proof of any abnormal conditions affect-

ing petitioner's capital or income. The only evidence is the amount of "income" and the amount of invested capital as determined by the respondent.

Section 327 (d) of the Revenue Act of 1921 contains the following:

This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, * * *

Petitioner is not entitled to the benefit of section 328 of the Revenue Act of 1921. See *Plainfield Grain Co.*, 9 B. T. A. 446.

> *Judgment will be entered under Rule 50.*