Harvey Brodsky v. Commissioner.
Brodsky v. Commissioner
Docket No. 83468.
United States Tax Court
T.C. Memo 1962-105; 1962 Tax Ct. Memo LEXIS 206; 21 T.C.M. (CCH) 578; T.C.M. (RIA) 62105; April 30, 1962
Arthur N. Nasser, Esq., and Kenneth B. Samuels, Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent has determined deficiencies in income tax and additions to tax for the calendar years 1954 and 1955 as follows: Additions to Tax
Deficiency
Section 6653(b)
1954
$39,386.95
$19,693.48
1955
27,800.59
13,900.30
The respondent *207 has conceded that the deficiency for 1955 was not due to fraud. This concession will be taken into account in a Rule 50 computation. The issues remaining for decision are: (1) Whether the assessment and collection of the deficiencies for the years 1954 and 1955 are barred by the three-year statute of limitations; and (2) Whether all or part of the deficiency for 1954 was due to fraud. Findings of Fact For the taxable years 1954 and 1955, the petitioner, Harvey Brodsky, filed individual Federal income tax returns with the district director of internal revenue, Chicago, Illinois. Petitioner's returns were filed under the name of Harvey Broad, a name he was also known by. On or about February 16, 1949, petitioner submitted a financial statement to the Internal Revenue Service in Chicago. This statement was submitted in connection with an offer in compromise of a prior income tax liability. At that time, the financial statement disclosed assets having a fair market value of $1,150 and liabilities of $3,000. For the taxable years 1949 through 1952 petitioner filed income tax returns in which he reported adjusted gross income and tax due as follows: Year
Reported
Tax
1949
$4,011.72
$530.00
1950
4,410.08
625.00
1951
4,095.55
728.00
1952
2,981.45
533.08
*208 The returns indicated that the sole source of the income reported was from the Hollywood Dance Studio (hereinafter referred to as the Studio). For the taxable year 1953, petitioner's return showed adjusted gross income of $4,650 and a tax due of $848. His income for that year consisted of his distributive share of the Studio's net income which amounted to $400, and long-term capital gain of $8,500 from the "Sale of one half of partnership interest." For the taxable year 1954, petitioner reported a net loss of $1,903.91 computed as follows: Sale of interest in Hollywood Dance Studio
$3,529.86
Less expense of sale
250.00
$3,279.86
Less 50 percent capital gain
1,639.93
$1,639.93
Interest income
60.00
$1,699.93
Less net operating loss of Hollywood Dance Studio
(2-6-53 to 1-31-54
$2,294.93)
(2-1-54 to 3-31-54
1,308.91)
[3,603.84)
Net loss reported
[1,903.91)
Prior to February 1953, petitioner and Vincent Fsadni operated the Studio as a partnership. In February 1953, petitioner entered into a partnership with Frank Padula (hereinafter referred to as Padula) to operate the Studio. Petitioner and Padula operated the Studio *209 for a little over a year. About the end of March 1954, the Studio ceased to operate. The Studio was a dance hall which was open seven nights a week. Tickets were sold which entitled the purchaser to dance with girls located on the premises. Generally petitioner was at the Studio for a time every night. The Studio employed a cashier, Dorothy Webb (hereinafter referred to as Dorothy), to sell tickets. If Dorothy had to leave the office for a time, petitioner would replace her and sell tickets. Dorothy furnished the information as to the Studio's cash receipts to the accountant who made out the Federal income tax return. In 1954, seven savings accounts were opened in five Chicago savings and loan associations. The sum of $10,000 was deposited in each account. The following schedule shows the name of the savings and loan association and the name in which the account was opened: Date Account
Name Account
Savings and Loan Assoc.
Opened
Opened In
Home Federal
8-31-54
Jack Litts
Bell Savings
8-31-54
Emil Litts
Uptown Federal
9- 3-54
Jack Litts
Uptown Federal
9- 3-54
Jack Litts, Trustee for
Sarah Litts
Northside Federal
9- 7-54
Emil Litts
Northside Federal
9- 7-54
Emil Litts, Trustee for
Sarah Litts
North Avenue Federal
9- 9-54
Emil Litts
*210 As of December 31, 1954, the total amount on deposit was $70,000.00. In 1955, three of the foregoing account names were changed. The dates and the changes are as follows: Name Account
Date
Name
Savings and Loan Assoc.
Opened In
Changed
Changed to
Home Federal
Jack Litts
2- 9-55
John Kane
Bell Savings
Emil Litts
2- 9-55
John Kane
North Avenue Federal
Emil Litts
2-10-55
John Brown
The signatures of Emil Litts, Jack Litts, John Kane, John Brown, John Williams, and Edward A. Herman were all in the handwriting of Harvey Brodsky. In 1955, petitioner was attempting to purchase a piece of property in Chicago known as the Division and Astor property. In connection with the purchase of this property, at petitioner's request, his attorney opened an escrow account in the name of John Williams. The funds from the aforementioned savings accounts were withdrawn. Each check was made out to the person in whose name the account was listed and endorsed with that name. Subsequently, the checks were again endorsed. The second endorser was John Williams. The $70,000 withdrawn from the savings accounts, together with an additional $48,000 was placed in the *211 escrow account opened in the name of John Williams. In 1955, when the purchase of the Division and Astor property failed to materialize, the escrow money was refunded. Eleven checks in the amount of $10,000 each and one check for $8,000 were made out to John Williams. After the $118,000 was withdrawn from escrow, $10,000 was used as earnest money for the purchase of property located at Deming and Hampton Streets in Chicago. The following schedule shows the disposition of the remaining eleven checks: Disposition
Amount Deposited
Name of Account
Institution
of Funds
or Taken in Cash
Funds Deposited to
Exchange National Bank
Deposit
$53,000
John Williams
Harris Trust and Savings
Deposit
10,000
John Williams
Cash
5,000
Home Federal Savings & Loan
Deposit
5,000
Edward A. Herman
First National Bank
Deposit
15,000
John Williams
Cash
10,000
Lincoln Park Savings & Loan
Deposit
10,000
John Brown
The notice of deficiency was mailed to petitioner on June 30, 1959. No part of the deficiency for 1954 was due to fraud with intent to evade tax. Opinion Issue 1. The petitioner did not appear at the trial of this case. The deficiencies *212 for 1954 and 1955 must be sustained unless they are barred by the three-year statute of limitation. [1] The statute of limitations was tolled on June 30, 1959, when the respondent issued the statutory notice of deficiency. [2]
As to the year 1954, petitioner filed his return on or before April 15, 1955. However, petitioner executed a form 872 for the year 1954, which extended the period of limitations to and including June 30, 1959. Since the statutory notice of deficiency was issued on June 30, 1959, we hold that the assessment and collection of the deficiency for 1954 is not barred by the statute of limitation. Although it appears that petitioner filed a Federal income tax return for 1955, it was not offered into evidence and there is no proof as to when it was filed. The burden is upon the petitioner to prove the facts necessary to show that the period provided in the statute had expired prior to the mailing of the deficiency notice. Refiners Production Co., 43 B.T.A. 481, 492 (1941); *213 Edward M. Lawrence, 3 B.T.A. 40 (1925); L. J. Christopher, et al., 13 B.T.A. 729, 740 (1928); J. Friedman & Co., 16 B.T.A. 1119, 1122 (1929); Elnora C. Haag, 19 B.T.A. 982, 986 (1930); Lester L. Robison, 22 B.T.A. 395, 399 (1931); M. A. Nicholson, et al., 22 B.T.A. 744, 746 (1931). For lack of proof, we hold that the statute of limitation is not a bar to the assessment and collection of the deficiency for 1955. Respondent's determinations as to the deficiencies for 1954 and 1955 are sustained. Issue 2. The question remaining for decision is whether all or part of the deficiency for 1954 was due to fraud. The burden of proving fraud is on the respondent. [3] Fraud must be proven by clear and convincing evidence. [4] Respondent must prove that the petitioner understated his income and that all or part of such understatement was due to petitioner's fraudulent intent to evade taxes. *214 Petitioner's failure to overcome the presumptive correctness of a deficiency cannot be regarded as proof of fraud. [5] Failure of proof cannot be used as a substitute for the evidence necessary to sustain respondent's burden. The elements of fraud must be affirmatively established. [6] Thus, both parties may fail through inadequate proof on their several issues and, in such case, the deficiency would be sustained and the fraud determination would be set aside. [7]
Respondent contends that the money deposited in the seven savings accounts in 1954 was currently taxable *215 income and petitioner's failure to report it was due to fraud. Respondent argues that the Studio was a likely source from which the $70,000 or some part of it could have come. As in many fraud cases, there is no direct evidence that petitioner had additional income which he did not report. In such cases, respondent has often resorted to such indirect means as the "net worth" and "bank deposits" methods of proving unreported income. In the instant case, respondent has relied on what he calls "bank deposits." As in the case of net worth increases, [8] respondent must introduce evidence to support an inference that bank deposits are attributable to currently taxable income. Bank deposits, [9] like net worth increases, [10] standing alone, cannot be assumed to reflect current, taxable income. In order to show, by the net worth or bank deposits method, that petitioner had currently taxable income that was unreported, respondent must establish a "likely source" from which it can reasonably be found that the net worth increases or bank deposits came [11] or respondent must negate all possible sources of nontaxable income. [12]
*216 By its very nature, the term "likely source" implies that there may be room for doubt. Thus, the respondent need not prove the "specific source" from which net worth increases or bank deposits emanate. However, a "likely source" does imply a degree of probability; [13] something more than a mere "possibility." Proof of a likely source has been made in several ways. In United States v. Johnson, 319 U.S. 503 (1943), a likely source was an undisclosed business capable of producing taxable income. In Holland v. United States, 348 U.S. 121 (1954), it was a disclosed business proven to be capable of producing much more income than was reported. See also Gleckman v. United States, 80 F. 2d 394, 399 (C.A. 8, 1935).[14] Where the taxpayer has no income-producing business, proof of a likely source has taken a different form. For example, in *217 United States v. Costello, 221 F. 2d 668 (C.A. 2, 1955), extensive gambling activities were shown. In United States v. Skidmore, 123 F. 2d 604 (C.A. 7, 1941), the theory was that the taxpayer had unreported income which he received from "protection" payments, and there was evidence that some such payments had been made to the taxpayer. In United States v. Chapman, 168 F. 2d 997 (C.A. 7, 1948), the theory was that the taxpayer had unreported income from the sale of meat in excess of ceiling prices, and there was evidence that several meat peddlers paid the excess sums to the taxpayer or his agents.
In the instant case, respondent has failed to prove a "likely source." The Studio was only in operation for approximately three months in 1954. There has *218 been no showing that the Studio was a "lucrative business" [15] or that it was "capable of producing much more income than was reported," [16] nor has it been shown that that petitioner had an undisclosed business capable of producing income. [17] In fact, the Studio, never appeared to be very prosperous. The record is also devoid of any evidence that there were any specific omissions of income by the Studio. Although petitioner generally visited the Studio each night, it does not appear that he had much to do with the handling of the receipts of the business. He did sell tickets at times, but this was only for for "a few minutes" to relieve Dorot. She furnished the information as to cash receipts to the accountant. The accountant testified that none of the information be used to prepare the partnership return was furnished by petitioner. Respondent undertook to negate all possible nontaxable sources of income, but we are unable to conclude, on the evidence presented, that he has done so. But, even assuming that respondent had been successful, *219 respondent, nevertheless, has failed to meet his burden. One of the fundamentals of our tax system is the annual accounting concept; each year is a separate taxable unit. Respondent must show that petitioner's income was understated in the year in which fraud is alleged. It is not sufficient that the deposits represent "unreported income." The deposits must represent "currently taxable income" that was not reported. From the state of this record, we are unable to conclude that there is any reasonable certainty that the deposits, or any part thereof, were currently taxable income in 1954. This is not the normal case where a taxpayer has been depositing and withdrawing money from a "bank account." There is evidence that petitioner had bank accounts as distinguished from savings accounts; however, there is no evidence that any effort was made to determine whether the alleged deposits came from these accounts. The very manner in which the deposits were made [18] suggests that the funds could have been shifted from other accounts or accumulated in prior years. *220 Although suspicion may be aroused by the facts of this record, mere suspicion is not a sufficient base for a finding of fraud. Fraud is never presumed and is not to be lightly inferred. We hold that the deficiency for 1954 was not due to fraud with intent to evade tax. Decision will be entered under Rule 50. Footnotes
1. Section 6501(a) of the 1954 Code provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." ↩
2. Section 6503(a)(1), 1954 Code.↩
3. Section 7454, 1954 Code. ↩
4. M. Rea Gano, 19 B.T.A. 518 (1930); Arlette Coat Co., 14 T.C. 751 (1950); W. A. Shaw, 27 T.C. 561 (1956), affd. 252 F. 2d 681↩ (C.A. 6, 1958).
5. Drieborg v. Commissioner, 225 F. 2d 216 (C.A. 6, 1955); Oscar G. Joseph, 32 B.T.A. 1192, 1204 (1935); James Nicholson, 32 B.T.A. 977, 988 (1935). Also see Shaw v. Commissioner, 252 F. 2d 681, 682↩ (C.A. 6, 1958), holding that petitioner's failure to testify is not proof of fraud. 6. Luerana Pigman, 31 T.C. 356 (1958); Oscar G. Joseph, supra; James Nicholson, supra.↩It is to be noticed that the presumption of correctness that attaches to a deficiency is not evidence.
7. L. Schepp Co., 25 B.T.A. 419, 437↩ (1932).
8. Holland v. United States, 348 U.S. 121, 137↩ (1954). Also requisite to the use of the net worth method is evidence supporting the inference that the defendant's net worth increases are attributable to currently taxable income.
9. Denny York, 24 T.C. 742 (1955); Goe v. Commissioner, 198 F. 2d 851, 852 (C.A. 3, 1952); Gleckman v. United States, 80 F. 2d 394, 399↩ (C.A. 8, 1935).
10. Holland v. United States, supra, pp. 137, 138↩. 11. Holland v. United States, supra, p. 138↩. 12. United States v. Massei, 355 U.S. 595 (1958), but compare Commissioner v. Thomas, 261 F. 2d 643 (1958); Gatling v. Commissioner, 286 F.2d 139↩ (1961).
13. Cf. Webster's Third New International Dictionary, 1961, p. 1310: 1. likely - 1. of such a nature or so circumstanced as to make something probable. 2. (a) seeming to justify belief or expectation. (b) having a better chance of existing or occurring than not. 2. likely - in all probability; probably.↩
14. The Court held that bank deposits alone did not represent taxable income but stated at page 399 that: * * * if it be shown that a man has a business or calling of a lucrative nature and is constantly, day by day and month by month, receiving moneys and depositing them to his account and checking against them for his own uses, there is the most potent testimony that he has income * * *.↩
15. Gleckman v. United States, supra.↩
16. Holland v. United States, supra.↩
17. Johnson v. United States, supra.↩
18. ↩
Deposits in 1954: Savings and Loan
Association
Date
Amount
Home Federal
August 31
$10,000
Bell Savings
August 31
10,000
Uptown Federal
September 3
10,000
Uptown Federal
September 3
10,000
Northside Federal
September 7
10,000
Northside Federal
September 7
10,000
North Avenue Federal
September 9
10,000
Deposits respondent alleges were made in 1955: North Avenue Federal
January 4
$10,000
North Avenue Federal
January 4
5,000
Liberty Federal
January 4
10,000
North Avenue Federal
January 8
10,000
Liberty Federal
February 10
10,000
Chicago Title and Trust
February
3,000