L. D. Lansdale, Jr., and Lennie V. Lansdale v. Commissioner.
Lansdale v. Commissioner
Docket No. 2257-62.
United States Tax Court
T.C. Memo 1965-133; 1965 Tax Ct. Memo LEXIS 196; 24 T.C.M. (CCH) 719; T.C.M. (RIA) 65133; May 19, 1965
Lester L. Lev, for the petitioners. Paul G. Wilson, Jr., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: Respondent determined deficiencies in income tax and an addition to tax under section 6653(a) of the 1954 Code [1] as follows: Year
Petitioner
Deficiency
Addition
1955
L. D. Lansdale, Jr.
$35,406.64
$1,770.33
1956
L. D. Lansdale, Jr.
9,030.08
0
1957
L. D. Lansdale, Jr.
9,627.34
0
1959
L. D. Lansdale, Jr.,
and Lennie V. Lans-
dale
64,173.11
0
The issues which remain for decision, after concessions by both parties, are: (1) Whether petitioner L. D. Lansdale, Jr., received distributions from the Dyke Water Company during the taxable years involved; (2) If so, did the Dyke Water Company have sufficient earnings and profits in 1955 to make any portion of the 1955 distributions taxable as dividends under section 316; and (3) Whether L. D. Lansdale, Jr., is liable for an addition to tax under *198 section 6653(a) for 1955. Findings of Fact L. D. Lansdale, Jr., (sometimes hereinafter referred to as petitioner) resides in Garden Grove, California, and in calendar years 1955, 1956, and 1957, filed individual income tax returns with the district director of internal revenue at Los Angeles, California. For calendar year 1959, he and his wife, Lennie V. Lansdale, filed a joint income tax return with the same office. The Dyke Water Company (sometimes hereinafter referred to as Dyke or the company) is a corporation organized by petitioner, his brother, William Lansdale, and Joseph Sadler on March 5, 1951. Dyke began operations as a public utility water company under authority of a decision of the California Public Utilities Commission dated February 13, 1952. In August 1952, eighty shares of Dyke common stock, having a par value of $100 per share, were issued to petitioner. This comprised the entire stock outstanding in the company at that time. On January 15, 1954, these eighty shares were reissued equally (twenty shares each) to petitioner, his brother, William, his father, L. D. Lansdale, Sr., and his mother, Arlyne Lansdale. The common stock continued to be so held throughout *199 all of the years in issue. No preferred stock was ever at any time issued by the company. The officers of Dyke as of April 10, 1951, were as follows: L. D. Lansdale, Jr.
President
William Lansdale
Vice President
Arlyne Lansdale
Secretary-Treasurer
The main office of Dyke during the calendar years 1954 through 1959 was located in Garden Grove, California. The company filed income tax returns for the fiscal year beginning March 1, 1954, and ending February 28, 1955, for the taxable period beginning on March 1, 1955, and ending December 31, 1955, and for the calendar years 1956, 1957, and 1959, with the district director of internal revenue at Los Angeles, California. During the calendar years 1954 to 1959, inclusive, petitioner obtained from Dyke substantial amounts (in addition to certain "travel money" and "[reimbursements]" which petitioner has conceded were income to him) through direct withdrawals from the funds of the company which amounts were reflected in accounts identified variously in the Dyke general ledger as account No. "230" and account No. "230.1." The cumulative balances outstanding against petitioner in those years by reason of these withdrawals *200 were as follows: 1954
$ 2,350.88
1955
42,975.03
1956
58,564.59
1957
61,270.53
1958
103,454.86
1959
94,552.14
In 1956, 1957, and 1959, Dyke had sufficient earnings and profits from which dividends could have been paid in the amounts shown in account Nos. 230 and 230.1. For 1955, Dyke's books and records reflected no earnings and profits and Dyke reported none on its corporate income tax returns filed for that year. Dyke had at least $40,624.15 of current and accumulated earnings and profits as of December 31, 1955. The amounts withdrawn by petitioner during the calendar years 1955, 1956, 1957, and 1959 were not obtained by him in exchange for notes, security, or other evidences of indebtedness. There was no agreement in existence between petitioner and Dyke during any of the years involved with respect to repayment to the latter of the amounts withdrawn by petitioner and no interest was ever charged to or paid by petitioner to Dyke by reason of these with drawals. The sums of money obtained by the petitioner throughout the years in issue were not expended by him in furtherance of the business of Dyke. None of the said amounts withdrawn by petitioner *201 from Dyke in the years in issue was reported as income in his individual income tax returns which were filed for the calendar years 1955, 1956, and 1957, and none was reported by petitioner and Lennie V. Lansdale in their joint income tax return which was filed for the calendar year 1959. During 1955, petitioner participated in several real estate transactions in the geographic area serviced by Dyke. He realized ordinary income in the amount of $19,819.30 from the sale of realty located in the city of Westminster but he did not report any portion of this gain in his income tax return filed for that year. Also in 1955, petitioner bought and sold, in transactions either simultaneous or closely related in time, several other parcels of realty. None of these transactions were reported by petitioner in his 1955 income tax return. Opinion The first issue for decision is whether certain withdrawals of funds by petitioner in the years here involved from Dyke, of which he was president and a 25 percent shareholder, constituted taxable income to petitioner. Respondent determined that petitioner's withdrawals were taxable income to him, and petitioner has the burden of proving to the *202 contrary. Rule 32, Tax Court Rules of Practice. Petitioner does not dispute that he received the amounts in question, but he contends that they were advances which were to be repaid. In support of this contention, petitioner offered the books of the company, which reflect his withdrawals in an account receivable, and the testimony of the company's accountant that the withdrawals reflected a debt which has not been forgiven and that he had no knowledge of any intent by the officers to forgive the repayment of such items. The evidence offered by petitioner falls far short of sustaining his burden. The question of whether the withdrawals were loans or taxable income to petitioner is one of fact. Andrew M. Spheeris, a Memorandum Opinion of this Court, affd. 284 F. 2d 928 (C.A. 7, 1960). The testimony of Dyke's accountant and the entries on the company's books constitute the entire proof offered by petitioner on this issue. Dyke is a closely-held family corporation and as such is to be given close scrutiny. William C. Baird, 25 T.C. 387 (1955); W. T. Wilson, 10 T.C. 251 (1948); Ben R. Meyer, 45 B.T.A. 228 (1941). Petitioner has conceded *203 that certain items recorded on Dyke's books as "travel money" and "[reimbusements]" were taxable income to him. This leads us to question the reliability of Dyke's books and records. Neither he nor any of the members of the family connected with the corporation testified in this case, so that we infer that any testimony they would have given would have been unfavorable to petitioner. Max Cohen, 9 T.C. 1156 (1947), affd. 176 F. 2d 394 (C.A. 10, 1949); L. J. Christopher et al., 13 B.T.A. 729 (1928), affd. 55 F. 2d 527 (C.A.D.C., 1931). Further facts which tend to establish that the withdrawals were not bona fide loans are the lack of any: notes or other evidence of indebtedness, collateral, interest payments by petitioner, plan or means of repayment; and the continuously increasing (and substantial) amounts of the outstanding balances. Cf. William C. Baird, supra; C. W. Murchison, 32 B.T.A. 32 (1935); Al Goodman, Inc., 23 T.C. 288 (1954). In the face of these negative indices, the testimony by Dyke's accountant as to his understanding of petitioner's intention to repay is simply not sufficient *204 to affirmatively overcome the presumptive correctness of respondent's determination. Similarly, the treatment of accounts on the corporate records is not controlling when such treatment is contrary to the realities of the transaction, as appears to be the situation here. Alabama-Georgia Syrup Co., 36 T.C. 747, 776 (1961), affd. 311 F. 2d 640 (C.A. 5, 1962); M. Jackson Crispin, 32 B.T.A. 151 (1935). We hold that the withdrawals constitute distributions of property under section 301(a). [2]
Having found the withdrawals to be taxable distributions to petitioner, the next issue is whether they are taxable as dividends under sections 301(c) and 316. [3] Petitioner contends that Dyke had no earnings and profits in 1955 and that his withdrawals in that year do not constitute the receipt of dividends. He concedes that there were sufficient earnings and profits *205 in 1956, 1957, and 1959. *206 The issue as to the amount of 1955 earnings and profits has arisen because respondent made certain adjustments to the computations in Dyke's returns, which had shown no earnings and profits as of the end of 1955. Respondent determined that Dyke had deducted from income various amounts for depreciation of assets (1) contributed by prospective customers; (2) purchased with cash contributions; (3) received by or purchased with money received by Dyke as "advances in aid of construction" for which the repayment liability of Dyke was doubtful in amount (and in respect to which the basis was therefore doubtful). Respondent further determined that Dyke had failed to include in income certain cash receipts and had assigned a 33 1/3-year useful life for depreciation purposes to its water mains which respondent determined to have a 50-year useful life. Respondent's adjustments result in a recomputation which reflects 1955 current earnings and profits of $46,661.69, and accumulated earnings and profits as of December 31, 1955, of $21,470.16. Thus the amount of current earnings and profits alone is sufficient to render taxable as dividends the $40,624.15 withdrawn by petitioner in 1955. In *207 support of his contention that there were no accumulated or current earnings and profits, petitioner once again relies principally on Dyke's books and records and contends that respondent's adjustments were improper. Petitioner contends that respondent erred in disallowing deductions for depreciation with respect to contributions from prospective customers and "advances in aid of construction" because Dyke must refund these amounts. Though petitioner alleges that the California Public Utilities Commission ordered refunds of the contributions, he has introduced no evidence whatsoever to support such allegations. He admits that Dyke originally believed that the contributions were nonrefundable and has contested some of the refunds but argues, without any factual support in this record, that the contributions were in fact refundable. Contributions of property and money to a public utility corporation by prospective customers who are nonshareholders result in a zero basis to the corporation in the assets acquired or purchased. Detroit Edison Co. v. Commissioner, 319 U.S. 98 (1943); section 362(c). [4] Since petitioner has failed to show that these "advances" were not unrefunded *208 as respondent determined, we sustain respondent's disallowance of the depreciation deductions taken by Dyke for purposes of computing its current and accumulated earnings and profits. Elizabethtown Water Co. Consolidated, 7 T.C. 406 (1946). *209 Because of a similar failure to show that certain amounts received from prospective customers qualified as "advances in aid of construction" or capital contributions, we sustain respondents' determination that these amounts constituted taxable income to Dyke in 1955. Respondent's final adjustment to Dyke's earnings and profits was a determination that Dyke's water mains had a useful life of 50 years, rather than the 33 1/3 years used by Dyke. Petitioner raises the specter of obsolescence, and, on cross examination of respondent's witness who had determined the 50-year useful life, did succeed in casting some minor doubt as to the adequacy of the latter's information, but he has once again completely failed to introduce any affirmative evidence. We must, therefore, sustain respondent's determination. Petitioner has failed to show error in respondent's recomputation of earnings and profits which reflects a sufficient amount to make petitioner's withdrawal in 1955 taxable as a dividend. Since neither a formal declaration nor a pro rata distribution is required in order for distributions to shareholders to be taxed as dividends, we hold that the withdrawals are so taxable. William *210 C. Baird, Speerhis v. Commissioner, and C. W. Murchison, all supra; Lincoln Nat. Bank v. Burnet, 63 F. 2d 131 (C.A.D.C., 1933), affirming 23 B.T.A. 1304 (1931). The final issue for decision is whether or not petitioner is liable for an addition to tax under section 6653(a) [5] for his failure to report his gain from the sale of real estate in the city of Westminster. In addition to this transaction, petitioner engaged in several other purchases and sales of real estate in 1955. None of these transactions were reflected on his 1955 income tax return. Cf. Pullman, Inc., 8 T.C. 292 (1947). On brief, petitioner's counsel contends that petitioner "honestly *211 believed that he was acting on behalf of the Dyke Water Company as an agent and that any gain or loss on the [Westminster] transaction was not reportable by him." The factual substantiation for this contention is not to be found in the record before us. At the risk of being repetitious, we must again find petitioner to have failed to sustain his burden of proof. We sustain respondent's determination on this issue. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 301. DISTRIBUTIONS OF PROPERTY. (a) In General. - Except as otherwise provided in this chapter, a distribution of property (as defined in section 317(a)) made by a corporation to a shareholder with respect to its stock shall be treated in the manner provided in subsection (c).↩
3. SEC. 301. DISTRIBUTIONS OF PROPERTY. * * *
(c) Amount Taxable. - In the case of a distribution to which subsection (a) applies - (1) Amount constituting dividend. - That portion of the distribution which is a dividend (as defined in section 316) shall be included in gross income. (2) Amount applied against basis. - That portion of the distribution which is not a dividend shall be applied against and reduce the adjusted basis of the stock. (3) Amount in excess of basis. - (A) In general. - Except as provided in subparagraph (B), that portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock, shall be treated as gain from the sale or exchange of property. (B) Distributions out of increase in value accrued before March 1, 1913. - That portion of the distribution which is not a dividend, to the extent that it exceeds the adjusted basis of the stock and to the extent that it is out of increase in value accrued before March 1, 1913, shall be exempt from tax. SEC. 316. DIVIDEND DEFINED. (a) General Rule. - For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders - (1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.↩
4. SEC. 362. BASIS TO CORPORATIONS. (c) Special Rule for Certain Contributions to Capital. - (1) Property other than money. - Notwithstanding subsection (a)(2), if property other than money - (A) is acquired by a corporation, on or after June 22, 1954, as a contribution to capital, and (B) is not contributed by a shareholder as such, then the basis of such property shall be zero. (2) Money. - Notwithstanding subsection (a)(2), if money - (A) is received by a corporation, on or after June 22, 1954, as a contribution to capital, and (B) is not contributed by a shareholder as such, then the basis of any property acquired with such money during the 12-month period beginning on the day the contribution is received shall be reduced by the amount of such contribution. The excess (if any) of the amount of such contribution over the amount of the reduction under the preceding sentence shall be applied to the reduction (as of the last day of the period specified in the preceding sentence) of the basis of any other property held by the taxpayer. The particular properties to which the reductions required by this paragraph shall be allocated shall be determined under regulations prescribed by the Secretary or his delegate.↩
5. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩